358 So.2d 7 (1978)
In re FLORIDA BOARD OF BAR EXAMINERS.
In re Robert Francis EIMERS.
No. 51154.
Supreme Court of Florida.
March 2, 1978.
*8 C. Graham Carothers, Tallahassee, for Florida Bd. of Bar Examiners, complainant.
Terry L. DeMeo and Bruce J. Winick of the American Civil Liberties Union Foundation of Florida, Inc., South Miami, for respondent.
PER CURIAM.
The Florida Board of Bar Examiners (the Board) has requested certain information for its guidance in determining the admissibility of an applicant to The Florida Bar. We treat the Board's request as one for an advisory opinion and assume jurisdiction pursuant to Article V, Section 15, Florida Constitution. The applicant was invited to file a brief in this cause setting forth his views and a brief on his behalf has been filed by counsel for the American Civil Liberties Union Foundation of Florida Inc.
The question which has been submitted by the Board with request for this Court's answer is:
Whether an applicant with an admitted homosexual orientation who is fully qualified for admission to The Florida Bar in all other respects can qualify for admission under the provisions of Article IV, Section 19, of the Rules of the Supreme Court of Florida Relating to Admission to the Bar, which section places a strict prohibition against any recommendation by the Board to the Supreme Court for admission to The Florida Bar for a person not determined to be of good moral character.
We answer this question in the affirmative, noting that our response is limited to situations in which the applicant's sexual orientation or preference is at issue. This opinion, then, does not address itself to the circumstance where evidence establishes that an individual has actually engaged in homosexual acts.
The applicant in the instant case is a graduate of an accredited law school, is certified for admission to the Pennsylvania Bar, and has passed all parts of The Florida Bar examination. The Florida Board of Bar Examiners has found him qualified for admission to The Florida Bar in all respects with the possible exception that he may fail to meet the "good moral character" standard for admission due to his homosexual preference.
The applicant admitted his homosexual preference in response to inquiry made at a hearing before the Board. He was not questioned about what sexual acts he may have engaged in. Further, no evidence was presented indicating that the applicant has acted or plans to act on his sexual preferences.
The United States Supreme Court described the term "good moral character" as "unusually ambiguous":
The term "good moral character" has long been used as a qualification for membership in the Bar and has served a useful purpose in this respect. However the term, by itself, is unusually ambiguous. *9 It can be defined in an almost unlimited number of ways for any definition will necessarily reflect the attitudes, experiences, and prejudices of the definer. Such a vague qualification, which is easily adapted to fit personal views and predilections, can be a dangerous instrument for arbitrary and discriminatory denial of the right to practice law. (Footnotes omitted) Konigsberg v. State Bar of California, 353 U.S. 252, 262-263, 77 S.Ct. 722, 728, 1 L.Ed.2d 810 (1957).
Wary of the state's capacity to arbitrarily deny an applicant admission to a state bar, the Supreme Court recognized as early as 1866 that the reasons for denying admission should be related to the purposes for exclusion. Ex parte Garland, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1866) (test oath required of all candidates for admission to the bar bore no relation to the qualifications necessary for the profession); cf. In re Rouss, 221 N.Y. 81, 85, 116 N.E. 782, 783 (1917). However, as long as there was a rational connection between the qualification and the applicant's ability to practice law, courts could exclude incompetent and iniquitous persons from the legal profession to protect clients and to assure a credible bar, Mitchell v. State Board of Law Examiners, 155 Mich. 452, 119 N.W. 587 (1909); Spears v. State Board of California, 211 Cal. 183, 294 P. 697 (1930).
Elucidating upon these principles in the landmark case of Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), the Supreme Court held that:
A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment... . A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law. (Emphasis added) Id. at 238-239, 77 S.Ct. at 756.
Thus, in determining fitness for admission to the bar, state courts must now meet the standard imposed by the due process clause found in the Fourteenth Amendment. In the instant case, the issue which must be resolved is whether there is a rational connection between homosexual orientation and fitness to practice law.
In assessing the reasonableness of the relation between homosexual orientation and moral unfitness to be an attorney, we must make reference to the purposes promoted by ostracizing the morally unfit. The layman must have confidence that he has employed an attorney who will protect his interests. See Drinker, Legal Ethics, p. 89-188 (1953). Further, society must be guaranteed that the applicant will not thwart the administration of justice. These exigencies arise because the technical nature of law provides the unscrupulous attorney with a frequent vehicle to defraud a client. Further, the lawyer can obstruct the judicial process in numerous ways, e.g., by recommending perjury, misrepresenting case holdings, or attempting to bribe judges or jurors. Consequently, if an applicant has committed certain illegal acts in the past, he may represent a future peril to society which would justify denying the applicant admission.
In the instant case, however, we cannot believe that the candidate's mere preference for homosexuality threatens these societal exigencies. In a related context, we note that former Justice Ervin in The Florida Bar v. Kay, 232 So.2d 378 (Fla. 1970) (Ervin, C.J., specially concurring),[1] observed:

*10 While Respondent's act definitely affronts public conventions, I am concerned as to the extent of the authority of the Board of Governors of The Florida Bar under controlling concepts of due process to continue the discipline of Respondent since there is no showing in the record of a substantial nexus between his antisocial act, or its notoriety, or place of commission, and a manifest permanent inability on Respondent's part to live up to the professional responsibility and conduct required of an attorney... .
* * * * * *
The present record contains no evidence  scientific, medical, pathological or otherwise  suggesting homosexual behavior among consenting adults is so indicative of character baseness as to warrant a condemnation per se of a participant's ability ever to live up to and perform other societal duties, including professional duties and responsibilities assigned to members of The Bar....
* * * * * *
Since it is held in Florida that The Bar has jurisdiction to discipline Florida Bar members concerning their personal or private morals, it would appear appropriate to require that such discipline be subject to a showing originally or when reinstatement is sought that there is a substantial connection between a member's antisocial behavior and his ability to otherwise carry out his professional responsibilities as an attorney. Otherwise, The Bar will be virtually unfettered in its power to censor the private morals of Florida Bar members, regardless of any nexus between the behavior and the ability to responsibly perform as an attorney. Governmental regulation in the area of private morality is generally considered anachronistic in the absence of a clear and convincing showing there is a substantial connection between the private acts regulated and public interests and welfare. (Emphasis added) Id. at 379-381.
Accordingly, we find that the applicant in the instant case is qualified for admission to The Florida Bar under the provisions of Article IV, Section 19, of the Rules of the Supreme Court of Florida Relating to Admission to The Florida Bar.
It is so ordered.
ADKINS, SUNDBERG, HATCHETT and KARL, JJ., concur.
OVERTON, C.J., and ENGLAND, J., concur in result only.
BOYD, J., dissents with an opinion.
BOYD, Justice, dissenting.
Applicant admits he is a homosexual. Before a finding on the issue of his fitness to practice law I would remand this cause to the Board of Bar Examiners for an inquiry into whether he has committed homosexual acts of the kind criminally outlawed by Section 800.02, Florida Statutes.[*] There should not be admitted to The Florida Bar anyone whose sexual life style contemplates routine violation of a criminal statute.
NOTES
[1] In The Florida Bar v. Kay, supra, this Court considered the propriety of permanently disbarring an attorney who was convicted of indecent exposure after being observed engaging in a homosexual act with a consenting adult in a public lavatory. The respondent was disbarred but The Bar indicated that no permanent disbarment was intended and he was subsequently readmitted to practice. While we find the following language persuasive, we do not mean to imply that we are not unmindful of the differing standards to be met for admissions to The Bar as compared to disciplinary or disbarment proceedings.
[*] See Franklin v. State, 257 So.2d 21, 24 (Fla. 1971).