403 So.2d 1315 (1981)
FLORIDA BOARD OF BAR EXAMINERS Re N.R.S.
No. 59238.
Supreme Court of Florida.
June 18, 1981.
*1316 Robert F. Eimers, American Civil Liberties Union Foundation of Florida, Inc., of Eimers & Jerome, Miami, for petitioner.
Paul B. Anton, Chairman, Florida Board of Bar Examiners, Hollywood, and C. Graham Carothers, Tallahassee, for respondent.
PER CURIAM.
We are asked to determine to what extent the Florida Board of Bar Examiners, in furtherance of its effort to determine the fitness of applicants for admission to the Florida Bar, may inquire into an applicant's sexual conduct. This issue arises from the application of an attorney admitted to practice in New York, who has successfully passed all parts of the Florida Bar examination. The board concedes that, except for the issue of sexual conduct, it has no adverse information concerning petitioner's fitness.
In his application for admission, petitioner disclosed that the Selective Service classified him 4-F, either because of a physical problem or because of his homosexuality. At an informal hearing the board inquired into petitioner's sexual conduct. Petitioner admitted a continuing sexual preference for men but refused to answer questions about his past sexual conduct and indicated that he had no present intention regarding future homosexual acts. He did state that he would obey all the laws of Florida.[*] After reviewing his testimony, the board requested that petitioner return to answer additional questions. He declined and petitioned this Court to order the board to certify him for admission to practice.
Petitioner presents a delicate issue. A lawyer
should be temperate and dignified, and he should refrain from all illegal and morally reprehensible conduct. Because of his position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude.
*1317 Fla. Bar Code Prof.Resp., E.C. 1-5. The board suggests that an applicant's past homosexual acts are relevant to determine whether past conduct will prevent him from achieving the social acceptance necessary to enable him to discharge his professional responsibilities and whether the applicant intends to disobey the laws of Florida which he seeks to be sworn to uphold.
The investigation performed by the Florida Board of Bar Examiners should be limited to inquiries which bear a rational relationship to an applicant's fitness to practice law. Accord, In re Florida Board of Bar Examiners, 358 So.2d 7 (Fla. 1978). Private noncommercial sex acts between consenting adults are not relevant to prove fitness to practice law. This might not be true of commercial or nonconsensual sex or sex involving minors.
In the instant case the board may ask the petitioner to respond to further questioning if, in good faith, it finds a need to assure itself that the petitioner's sexual conduct is other than noncommercial, private, and between consenting adults. Otherwise, the board shall certify his admission.
It is so ordered.
SUNDBERG, C.J., and ADKINS, OVERTON, ENGLAND and McDONALD, JJ., concur.
BOYD, J., dissents with an opinion.
ALDERMAN, J., dissents with an opinion, with which BOYD, J., concurs.
BOYD, Justice, dissenting.
Article IV, section 19, of the Supreme Court Rules Relating to Admissions to the Bar provides:
No person shall be recommended by the Florida Board of Bar Examiners to the Supreme Court of Florida for admission to The Florida Bar unless he first produces satisfactory evidence to the Board that he is of good moral character, that he has an adequate knowledge of the standards and ideals of the profession and is otherwise a fit person to take the oath and perform the obligations and responsibilities of an attorney.
In furtherance of this rule, the board sought to have the applicant answer questions concerning the effects of his admitted homosexual "orientation." I believe we should uphold the board.
A state may not exclude a person from the practice of law for reasons that violate fundamental constitutional rights. A qualification imposed by a state must have a rational connection with the applicant's fitness to practice law. Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957).
An admitted "homosexual orientation" in essence means a proclivity to engage in homosexual acts. Homosexual acts are prohibited by the criminal law. § 800.02, Fla. Stat. (1979). The question whether they should be prohibited is a legislative and not a judicial question. Under its sovereign police power, the state may outlaw acts which are inimical to public morals. The state is not prevented from prohibiting homosexual acts by any constitutional principle of due process, equal protection, or privacy. See Annot., 58 A.L.R.3d 636. The state's interest in prohibiting such conduct is grounded in its power to protect the public health, welfare, safety, and morals.
Because the legislature has chosen, on proper moral grounds, to prohibit homosexual activities, such activities involve moral turpitude as a matter of law. A proclivity to commit criminal acts involving moral turpitude is clearly a proper basis for questioning whether an applicant has the moral qualifications for admission.
In re Fla. Board of Bar Examiners, 358 So.2d 7 (Fla. 1978), held that an admitted homosexual orientation is not sufficient to disqualify an applicant in the absence of evidence showing that the applicant had actually engaged in homosexual acts. I dissented on the ground that the applicant's admitted "orientation" indicated a lifestyle that contemplated routine violation of a criminal statute. The narrow issue in the present case arises out of the applicant's refusal to answer questions about possible *1318 illegal activity toward which the applicant has indicated he has an "orientation."
In the previous case, the Court noted that there was no evidence that the applicant had engaged or would engage in any homosexual acts. Thus the majority there was able to limit the legal question to whether there was a rational connection between a mere homosexual "orientation" and the board's refusal to find good moral character. The board could present a different factual situation and legal question to the Court if it could obtain information concerning the present applicant's actual conduct, and its attempt to do so is what is at issue. I would uphold the board's decision not to recommend the applicant.
Even without evidence of actual conduct, I am opposed to the admission of any person whose admitted "orientation" indicates a lifestyle likely to involve routine violation of a criminal statute.
My view expressed here is not grounded on the fact that the illicit activity toward which the applicant has an "orientation" is homosexual activity. I would apply the same principle to any applicant with an admitted orientation that indicates a lifestyle involving routine violation of any of those laws which constitute legislative standards of morality in personal conduct. Licentious sexual activity between consenting adults of opposite sex, for example, is also prohibited by the criminal law, and this Court has upheld such prohibition. Tatzel v. State, 356 So.2d 787 (Fla. 1978).
The majority opinion states: "Private noncommercial sex acts between consenting adults are not relevant to prove fitness to practice law." This statement represents an invasion of the province of the legislature since it is the legislature's function to establish standards of morality in personal conduct.
ALDERMAN, Justice, dissenting.
I agree that the Florida Board of Bar Examiners may ask the petitioner additional questions concerning his past, present, and intended homosexual activities. I would not, however, limit the Board's inquiry to a determination that petitioner's homosexual activities are other than noncommercial, private, and between consenting adults. The Board should inquire into any homosexual activities of the petitioner just as it should inquire into any other illegal and morally reprehensible conduct of the petitioner.
The people of Florida have granted to this Court the exclusive jurisdiction to regulate the admission of persons to the practice of law. Art. V, § 15, Fla. Const. To assist us in the exercise of this jurisdiction, we created the Florida Board of Bar Examiners and directed that it recommend no person for admission to The Florida Bar unless that person first produces satisfactory evidence to the Board of his good moral character. Fla.Sup.Ct. Bar Admiss. Rule, art. IV, § 19.
Proof of good moral character is required because lawyers play such a vital role in our legal system. Lawyers are officers of the court, and, in the eyes of the public, they are a part of the machinery of the law. Even minor violations of law by lawyers tend to lessen public confidence in the legal profession, which in turn lessens public confidence in our judicial system and ultimately the law itself. Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude. Fla.Bar Code Prof.Resp., E.C. 1-5.
Admission to the practice of law is not a matter of right. It is instead a privilege granted only to those who can meet the high educational and moral standards of the profession. Just as the public rightly expects that this Court will reject any applicant who fails to meet the educational requirements of the profession, it likewise expects that we will reject any applicant who fails to meet the moral standards of the profession.
What is our responsibility in this case? How deep should we look into the petitioner's life in order to determine if he is of good moral character? The fact that petitioner, in the past, may have committed *1319 homosexual acts would not necessarily exclude him from the practice of law. The same would be true, for example, if petitioner, while in high school, had been convicted of shoplifting. If he were otherwise qualified, if he acknowledges that his past conduct was improper, and if he establishes that he has no intention of repeating his past misconduct, he would not be denied admission because of his past mistake. On the other hand, if petitioner has a recent history of shoplifting and indicates that he plans to continue shoplifting because he sees nothing wrong with what he is doing, most certainly he would be denied admission. We should likewise deny admission to any applicant with a recent history of homosexual activity who indicates that he plans to continue this activity because he sees nothing wrong with what he is doing. The great majority of Floridians, I believe, agree that such conduct, even between consenting adults, is morally reprehensible. Also, in Florida, the law is clear that such unnatural and licentious sexual intercourse is unlawful. See sections 796.07 and 800.02, Florida Statutes (1979).
In the present case, the Board's investigation, although not conclusive, indicates that petitioner may be engaging in homosexual activity and that he has no intention of changing his ways. These facts may be determined only by further investigation. Until such investigation has been concluded and until we have received a complete report on petitioner's fitness and character, we should reserve judgment on this application for admission.
BOYD, J., concurs.
NOTES
[*] Petitioner alleges that § 800.02, Fla. Stat. (1979), which proscribes unnatural and lascivious acts, cannot be constitutionally applied to private consensual conduct between adults. We have upheld § 800.02. See Witherspoon v. State, 278 So.2d 611 (Fla. 1973). In view of our holding in this case we do not respond to this contention.