**UNITED STATES of America, Appellee,**

v.

**Charles Loyd LEMONS, Jr., Appellant.**

**No. 82–1557.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 9, 1982.

Decided Jan. 17, 1983.

Rehearing and Rehearing En Banc
Denied March 1, 1983.

count of violating the Arkansas "sodomy" statute, Ark.Stat.Ann. § 41–1813 (1977). Lemons contends that the statute under which he was convicted, on its face, violates his constitutional right to privacy, creates a classification prohibited under the equal protection clause of the fourteenth amendment, and is an unconstitutional punishment of status under the eighth and fourteenth amendments. Because the statute as applied to Lemons does not infringe any protected privacy right or improperly discriminate against him based on sexual preference, and because the statute punishes conduct rather than status, we affirm his conviction.

Paul D. Gordon, of the American Civil Liberties Union of Arkansas, Little Rock, Ark., for appellant.

W. Asa Hutchinson, U.S. Atty., Steven N. Snyder, Asst. U.S. Atty., Fort Smith, Ark., for appellee.

Jay M. Kohorn, Los Angeles, Cal., for amicus curiae American Ass'n for Personal Privacy.

Steve Clark, Atty. Gen., State of Ark. by Dennis R. Molock, Deputy Atty. Gen., Little Rock, Ark., amicus curiae.

Before HEANEY, and FAGG, Circuit Judges, and HENLEY, Senior Circuit Judge.[*]

HEANEY, Circuit Judge.

Charles Loyd Lemons, Jr., appeals his conviction by the district court[1] on one

## I. FACTS.

On February 19, 1982, in the early afternoon, Terry Gross, a ranger for the Department of the Interior National Parks Service, observed Lemons and another male in vehicles parked next to each other in Hot Springs National Park, Hot Springs, Arkansas. Approximately five minutes after this observation, Gross noticed that both vehicles apparently had been abandoned and that the radio in one of them was playing loudly. He decided to investigate the situation and found that both vehicles were unoccupied.

Gross then proceeded to a public restroom which was in the vicinity. He heard groaning-type utterances coming from the restroom, entered the men's section of the facility, and saw the legs of two persons beneath the partition of one stall in the restroom. Through the opening in the partially closed door to the stall, he saw two individuals. He opened the unlocked door to find Lemons and another male engaging in oral sex. Gross arrested the men and issued a violation notice against Lemons[2] charging

---

[*] This case initially was submitted to the panel of HEANEY, Circuit Judge, and STEPHENSON and HENLEY, Senior Circuit Judges. After Judge Stephenson's death on November 5, 1982, the submission was vacated and resubmitted to the panel of HEANEY and FAGG, Circuit Judges, and HENLEY, Senior Circuit Judge.

1. The Honorable Oren Harris, Senior Judge in the United States District Court for the Western District of Arkansas.

2. The other man apparently was charged also but he is not a party to this case or appeal.

him with violating the Arkansas sodomy statute.[3]

The district court tried Lemons without a jury for violating Arkansas law on federal land under the assimilative crimes statute. 18 U.S.C. § 13 (1976). *See also* 18 U.S.C. § 3401(a) & (b) (Supp. III, 1979). Immediately prior to trial, Lemons filed a motion to dismiss, with a supporting memorandum, claiming that the Arkansas sodomy statute was unconstitutional on its face for the same reasons he now presses on appeal. The district court denied the motion subject to its renewal at a more appropriate time. The United States then put ranger Gross on the stand to testify about his observations and arrest of February 19, 1982. Lemons' attorney did not cross-examine Gross and the prosecution then rested. Lemons put on no direct evidence in his defense, but renewed his motion to dismiss on constitutional grounds. The court again denied the motion without further explanation and sentenced Lemons to ninety days imprisonment. The court stayed execution of that judgment pending this appeal.

## II. DISCUSSION OF ISSUES.

### A. *Right to Privacy.*

On appeal, Lemons thoroughly develops his argument that the Arkansas sodomy statute, on its face, prohibits private, adult, consensual sexual conduct between persons of the same sex. He claims this prohibition violates his right to "decisional" privacy, that is, the right to make private affectional choices, a right which he asserts is pro-

tected by the federal Constitution. Although the specific source of the constitutional right to privacy is unclear, *see Roe v. Wade,* 410 U.S. 113, 152–153, 93 S.Ct. 705, 726–727, 35 L.Ed.2d 147 (1973), Lemons relies on several recent lower court cases which have held that the right extends to private, adult, consensual sexual conduct between persons of the same sex. *E.g., Baker v. Wade,* 553 F.Supp. 1121 (N.D. Tex.1982); *People v. Onofre,* 51 N.Y.2d 476, 415 N.E.2d 936, 434 N.Y.S.2d 947 (1980), *cert. denied,* 451 U.S. 987, 101 S.Ct. 2323, 68 L.Ed.2d 845 (1981). *See also Commonwealth v. Bonadio,* 490 Pa. 91, 415 A.2d 47 (1980). The conduct for which the district court convicted Lemons, however, occurred in a public restroom. Because we only examine the constitutionality of the Arkansas sodomy statute as the court applied it to Lemons, we do not reach the question whether the statute is constitutional under all hypothetical applications.[4]

▮ We limit our inquiry to the constitutionality of the statute as applied in this case pursuant to the prudential rule of judicial self-restraint established by the Supreme Court which requires federal courts to limit their constitutional scrutiny of statutes to the particular facts of each case. The Supreme Court characterizes this rule as an element of standing to raise constitutional questions. *See County Court of Ulster County v. Allen,* 442 U.S. 140, 154–155, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979); *Singleton v. Wulff,* 428 U.S. 106, 112, 96

---

3. Ark.Stat.Ann. § 41–1813 (1977) reads:

   *Sodomy.*—(1) A person commits sodomy if such person performs any act of sexual gratification involving:

   (a) the penetration, however slight, of the anus or mouth of an animal or a person by the penis of a person of the same sex or an animal; or

   (b) the penetration, however slight, of the vagina or anus of an animal or a person by any body member of a person of the same sex or an animal.

   (2) Sodomy is a class "A" misdemeanor.

4. Lemons vigorously argued in his briefs and at oral argument that his right to privacy claim does not rest on the location of his acts, but on

his right to freely decide matters of affectional choice. *See Whalen v. Roe,* 429 U.S. 589, 599–604, 97 S.Ct. 869, 876–879, 51 L.Ed.2d 64 (1977). He asserts that the location of his acts is therefore irrelevant in this case. We understand the argument, but disagree with the conclusion. The location of Lemons' conduct is relevant to the question of the circumstances under which the district court applied the statute to Lemons. The scope of our constitutional inquiry is limited to those circumstances. Thus, we only decide whether the Arkansas sodomy statute as applied to sexual acts between members of the same sex in a public restroom—the circumstances of Lemons' conviction—is constitutional.

S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976); United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960). The rule, however, is an expression of judicial self-restraint apart from the "case or controversy" requirement in Article III of the federal Constitution which is the basis of much standing doctrine. See Eisenstadt v. Baird, 405 U.S. 438, 443–444, 92 S.Ct. 1029, 1033, 31 L.Ed.2d 349 (1972) (finding that the defendant had sufficient interest in the litigation to meet Article III requirement and then examining "the Court's self-imposed rules of restraint" which limit review of a statute to the circumstances of its application and restrict litigants from raising the claims of third persons). This rule is a matter of federal judicial practice rather than constitutional mandate. See generally 13 Wright, Miller & Cooper, Federal Practice and Procedure §§ 3531, 175–176 and 205 (1975) (discussing distinction between Article III requirement and prudential judicial restraint). Thus, although Lemons has constitutional standing under Article III to attack the Arkansas sodomy statute, the scope of his attack is limited by this prudential rule to the circumstances under which the statute was applied to him.

■ The prudential doctrine of judicial self-restraint which we apply here is "separability"—when possible, we must narrowly read a statute to be constitutional as applied to the facts of the case before us and cannot consider other arguably unconstitutional applications of that statute. See Monaghan, Overbreadth, 1981 Sup.Ct.Rev. 1, 5–6. The Supreme Court has recognized specific exceptions to this doctrine: a court may entertain facial attacks on statutes when an aggrieved third person could not properly raise an issue on her or his behalf, when the statute itself has an inhibitory effect on freedom of speech, when a limiting construction of a criminal statute would make the statute unconstitutionally vague,

when a state court has pronounced that the statute is constitutional in all its applications, or in the rare case when a court can determine that the legislature would not want the statute to stand unless it could stand in all its applications. United States v. Raines, supra, 362 U.S. at 22–23, 80 S.Ct. at 523. None of these exceptions apply to allow Lemons to avoid the separability doctrine in the present case.

■ First, persons who seek to raise the privacy issue as it relates to the application of the Arkansas sodomy statute to acts done in private may do so outside the confines of the present litigation. Indeed, Lemons relies heavily on a recent federal district court decision striking down a similar provision of the Texas Penal Code in the context of a request for declaratory judgment. Baker v. Wade, supra, 553 F.Supp. at 1126. We have no indication that a similar request for declaratory judgment in Arkansas by persons fearing prosecution for private acts under the sodomy statute would not be feasible or would prove fruitless. We express no opinion on the merits of such an action.

Secondly, the "chilling effect" exception to the separability doctrine, which is traditionally called "overbreadth," consistently has been applied only to claims that a statute, though constitutional in its present application, tends to "chill" the constitutional free speech rights of others, in different contexts, in violation of the first amendment. See generally Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844 (1970). Although some commentators have argued that this exception should extend to facial attacks based on other constitutional protections, id. at 852–853, Monaghan, supra, at 8–13, the Supreme Court has tended to limit this exception to traditional free speech cases.[5] See

---

5. The Court recently applied the separability doctrine in a right of privacy case in the face of appellant's claim of statutory overbreadth. In H.L. v. Matheson, 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981), the Supreme Court refused to allow a facial attack on a Utah statute requiring physicians to notify parents before giving an abortion to a minor. The appellant premised her attack on the constitutional privacy rights of mature, emancipated minors. Even though she represented a class of minor women wishing to terminate their pregnancies

*County Court of Ulster County v. Allen, supra,* 442 U.S. at 155, 99 S.Ct. at 2223; *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 507, 102 S.Ct. 1186, 1198, 71 L.Ed.2d 362, 377 (1982) (White, J., concurring); *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 634, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980). We follow this precedent and find that the overbreadth exception does not apply to Lemons' privacy claim.

■ Third, our limited review of the Arkansas sodomy statute will not render the statute unconstitutionally vague. The statute gives fair warning that certain sexual acts are prohibited. Our restricted reading that, at least as to those acts done in public, the statute does not violate any constitutional provision falls within the clear prohibition derived from this statutory language. In such a situation, Lemons cannot legitimately claim that our reading of the statute makes it unconstitutionally vague. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., supra,* 455 U.S. at 495 & n. 7, 497–504, 102 S.Ct. at 1191 & n. 7, 1193–1196, 71 L.Ed.2d at 369 & n. 7, 371–375.

■ Fourth, we are aware of no state decision which has held that the Arkansas sodomy statute applies to the proscribed conduct when performed either in private or in public. Lemons' counsel at trial indicated that this case apparently was the first prosecution under that statute, much less the first case to question its constitutionality. Our research supports that assertion. Thus, in the absence of state court directions that the statute applies to both public and private acts, we limit our inquiry to the facts before us. *Cf. Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 65–66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981) (federal court bound by previous state court construction as to the scope of state statute).

■ Finally, this is not the "rare case" in which we can determine that the Arkansas legislature would not want the statute to stand if it could not stand in all of its applications. Even assuming that the legislature intended the sodomy statute to reach private homosexual activity if constitutionally permitted, we have no evidence that the legislature would wish the provision excised from the criminal code if a court should limit its application in any way. Thus, our consideration of the major exceptions to the separability doctrine indicates that none of them apply in this case, and we are limited by prudential concerns to deciding the constitutionality of the Arkansas sodomy statute only as it has been applied to Lemons.

■ Having decided to limit our constitutional scrutiny of the Arkansas sodomy statute to the facts of Lemons' conviction, we hold that the statute, as applied to him, does not violate his constitutional right to privacy, whatever the outer bounds of that right may be. None of the cases cited by Lemons hold that a "decisional" right to privacy extends to a decision to express one's affectional choice in the form of public oral sexual conduct. Lemons contends that public sexuality is not the issue here. To the contrary, we find that Lemons' public sexual conduct is the sole issue here. We remain unconvinced that the constitutional right to privacy extends to Lemons' conduct, much less that the State of Arkansas does not have a compelling interest in limiting public sexuality, even if arguably given some constitutional protection, to prohibit oral sex in a public restroom within the confines of a national park.

without parental notice, the Court refused to consider the constitutionality of the statute as applied to mature, emancipated minors. It stated, "We need not reach that question since she [the appellant] did not allege or proffer any evidence that either she or any member of her class is mature or emancipated." *Id.* at 405–

406, 101 S.Ct. at 1169 (footnote omitted). The majority assumed that the statutory language at issue would be construed and applied in a manner to protect the constitutional rights of others not before the Court. *Id.* at 406, 101 S.Ct. at 1196.

## B. *Equal Protection.*

Lemons next claims that the Arkansas sodomy statute only punishes sexual acts between members of the same sex, leaving heterosexual couples free to perform the exact conduct proscribed for homosexual couples. He asserts that this is a discrimination prohibited by the equal protection clause of the federal Constitution, because there is no compelling or even rational reason to support such discrimination. Lemons again presses this contention in terms of a facial attack on the statute. As in our examination of his privacy argument, we decline to entertain a facial attack in this case and limit our equal protection analysis to the question of whether this application of the Arkansas sodomy statute violates the equal protection clause.

▬ We do so for the same prudential reasons that require our "as applied" approach to Lemons' privacy attack. One First Circuit opinion has indicated in dicta that once a person has standing in the constitutional sense to contest a statute, a facial equal protection challenge might always be proper. *Mancuso v. Taft,* 476 F.2d 187, 191–192 (1st Cir.1973). We refuse to follow that approach and believe that the separability doctrine should apply to the equal protection challenge in this case. The Supreme Court has applied separability to an equal protection challenge in *New York City Transit Authority v. Beazer,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979). In *Beazer,* a class of plaintiffs attacked the Transit Authority's policy of refusing to hire persons who use methadone, a drug used to treat narcotics addicts. The plaintiffs claimed violations of both Title VII of the Civil Rights Act of 1964 and the equal protection clause. *Id.* at 570, 99 S.Ct. at 1358. The Court held that the only question presented was whether exclusion of *current* methadone users violated Title VII or the equal protection clause. It stated that

> neither the findings of fact, nor the record evidence, squarely presents any issue with respect to former users that must be resolved in order to dispose of this litiga-

tion. * * * A policy excluding all former users would be harder to justify than a policy applicable only to persons currently receiving treatment. A court should not reach out to express an opinion on the constitutionality of such a policy unless necessary to adjudicate a concrete dispute between adverse litigants. We shall therefore confine our consideration to the legality of TA's enforcement of its Rule 11(b) against *current* users of methadone.

*Id.* at 572 n. 3, 99 S.Ct. at 1359 n. 3 (emphasis original); *see also Craig v. Boren,* 429 U.S. 190, 195 n. 4, 97 S.Ct. 451, 456 n. 4, 50 L.Ed.2d 397 (1976) (another equal protection case affirming the validity of the *Raines* separability rule where the rights of the instant parties and third persons not made party are not mutually interdependent). We therefore review the validity of the Arkansas sodomy statute in terms of the equal protection clause only insofar as it has been applied to Lemons in the present case.

▬ With the question posed in this manner, we find that the application of the statute to Lemons does not discriminate against him or any class to which he belongs so as to trigger further analysis under the equal protection clause. In thus holding, we look to the Arkansas criminal code in its entirety rather than the sodomy provision taken in isolation and out of context. We have taken a similar stance recently in *Country v. Parratt,* 684 F.2d 588, 591 (8th Cir.1982), in which we looked to various provisions of the Nebraska criminal code in our equal protection review of the Nebraska forcible rape statute. *Accord Michael M. v. Superior Court of Sonoma County,* 450 U.S. 464, 476–477, 101 S.Ct. 1200, 1208, 67 L.Ed.2d 437 (1981) (Stewart, J., concurring). *Cf. Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 69–70, 83 S.Ct. 1201, 1203–1204, 10 L.Ed.2d 202 (1963) (whole scheme of state taxation considered in determining whether Louisiana's use tax discriminated against out-of-state commerce and thus was an unconstitutional burden on interstate commerce).

Reviewing the Arkansas criminal code in this light, we find that the conduct for which Lemons was convicted, public oral sexual activity, would have violated Arkansas law if performed by a heterosexual couple. The Arkansas public sexual indecency act provides that a person "commits public sexual indecency if he engages in any of the following acts in a public place or public view: * * * (b) an act of deviate sexual activity." Ark.Stat.Ann. § 41–1811 (1977). "Deviate sexual activity" is defined to include oral sex even between heterosexuals, *id.*, § 41–1801(1)(a), and "public place" includes "a publicly or privately owned place to which the public or substantial numbers of people have access," *id.*, § 41–1801(6). A violation of the public sexual indecency act is a class "A" misdemeanor, just like a violation of the sodomy statute. *Id.*, §§ 41–1811(2) & 41–1813(2). Thus, a heterosexual couple engaging in the identical conduct for which Lemons was convicted would be subject to the exact penalty he was subject to under his one count charge.[6] Given these facts, the application of the sodomy statute to Lemons in no way discriminated against him as compared to any other person or class of people subject to Arkansas law.[7] Absent any discrimination,

Lemons cannot claim he has been deprived equal protection of the laws under the rational relationship, strict scrutiny, or any intermediate test.

### C. *Cruel and Unusual Punishment.*

Lemons' final contention is that the Arkansas sodomy statute punishes only the "status" of homosexuality and is therefore cruel and unusual punishment proscribed by the eighth and fourteenth amendments to the federal Constitution. This contention is premised on his claim that the acts described in the sodomy statute are only prohibited when performed by homosexuals, thus status is all that is being punished. We disagree. The statute punishes conduct, not status. An avowed homosexual is not punishable under the statute unless the prohibited acts are performed. Whether those acts are unfairly permitted between heterosexual couples while prohibited between homosexual couples is a question of equal protection which we have already decided adverse to Lemons.

### III. CONCLUSION.

The simple fact is that, in this case, Lemons is guilty of performing acts in public

---

6. Lemons asserts that under Arkansas's present statutory framework, he was liable to conviction under two statutes, the sodomy statute and the public sexual indecency statute, for the acts which he committed in Hot Springs National Park. Since members of a heterosexual couple engaging in public oral sexual conduct are liable only under the public sexual indecency statute, he argues that the possibility of his double conviction amounts to discrimination in violation of the equal protection clause. Such a possibility might be enough to constitute discrimination in another action, for example a declaratory judgment proceeding raising the same claim, requiring further equal protection analysis. Lemons was charged and convicted of only one count of sodomy, however. Members of a heterosexual couple performing the same acts as he would be liable for conviction under one count of public sexual indecency. Lemons does not allege any discrimination in the actual application of either of these provisions, so we may assume that the heterosexual couple would also have been arrested and convicted under identical circumstances.

7. The fact that our review of the Arkansas criminal code as one body of law narrows our inquiry to the point of finding no discrimination

in the instant case does not distinguish our analysis here from that in *Country v. Parratt, supra*. In *Country,* our review of Nebraska criminal law revealed that, under the Nebraska forcible rape statute, men were subject to greater penalties than women for similar conduct. *Id.* at 591. The habeas petitioners in that case were actually convicted under the statute, subjecting them to those increased penalties, so we further analyzed their equal protection claims. *Id.* at 589. In contrast, Lemons was not charged or convicted under provisions subjecting him to increased or discriminatory penalties.

In a post-argument response to this Court, Lemons claims that our approach violates his procedural due process rights by in effect convicting him of public sexual indecency, a crime for which he has never been charged and has not been given the opportunity to prepare a defense. This is not the case: Lemons was convicted under the Arkansas sodomy statute and that conviction we affirm. We only look to other provisions of the criminal code in order to properly analyze his equal protection claim.

which are proscribed as to all persons subject to Arkansas law. We limit our constitutional inquiry to this fact and hold that Lemons' present conviction does not violate the federal Constitution. We do not decide any issue beyond this holding. The judgment of the district court is therefore affirmed.

FAGG, Circuit Judge, concurring.

The holding in this case is a narrow one indeed. We are dealing with the undisputed facts of Lemons' conviction—oral sexual activity by male partners in a public restroom. The issue of Lemons' right to make private affectional choices is not involved in our holding. He simply does not have a reasonable expectation of privacy under the federal constitution to consummate his chosen sexual intimacy in a public restroom. It is Lemons' conduct, not his homosexual status, that has exposed him to punishment. Under the Arkansas criminal code, any person performing oral sexual activity in a public restroom is in violation of the Arkansas law and would be subject to the same penalty as Lemons. Hence, in the final analysis, Lemons has not been discriminated against because of his sexual preference. He has been treated the same as every other person engaging in identical conduct would be treated. The application of the sodomy statute to him does not generate an equal protection claim which requires a response on our part. Therefore, it is appropriate for this court to exercise judicial restraint, narrowly limit our constitutional analysis of the sodomy statute to its application in the real life factual situation at hand, and decline Lemons' invitation that we reach out and measure the constitutionality of the statute by facts and applications that are not yet before the court.

HENLEY, Senior Circuit Judge, dissenting.

Because I think the appellant has properly raised a valid equal protection challenge to the Arkansas sodomy statute on the ground that it impermissibly discriminates against homosexuals,[1] I must dissent. The majority appears to have broken new constitutional ground in the field of equal protection, first by applying the separability doctrine to deny a facial attack by a member of the class against which discrimination is alleged, and second by concluding that because appellant could have been similarly punished under the Arkansas public sexual indecency statute, he suffered no discrimination. Justification in law or judicial policy for such an unprecedented departure from traditional equal protection analysis is not readily discoverable.

This court, in *Country v. Parratt,* 684 F.2d 588 (8th Cir.1982), said in part: "Equal protection analysis must always determine what the statute's purpose is, whether the objective is legitimate, and how relevant the differences between the classes are to the statute's goal." *Id.* at 590. Before applying these guidelines, however, the majority here employs the separability doctrine to confine inquiry to whether the statute discriminates against homosexuals who engage in oral sex in public, and in so doing declines to follow the holding in *Mancuso v. Taft,* 476 F.2d 187 (1st Cir.1973), that "one within the terms of a classification may challenge it facially on equal protection grounds," *id.* at 191. Yet, the First Circuit observed that that court knew of "no case in which the Supreme Court has refused to consider a facial equal protection challenge by one within the affected classification." *Id.* My research does not reveal any subsequent case which renders this observation obsolete.[2] *See, e.g., Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Plyler v. Doe,* —— U.S. ——, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *see also Country v. Parratt, supra* (wherein this court analyzed the constitutionality of the Nebraska forcible rape statute on its face).

---

1. For this reason, I find it unnecessary to address the right to privacy issue.

2. "Individual adjudications would ... appear unnecessarily to impose repetitive judicial scrutiny and possibly intervention." *Mancuso v. Taft,* 476 F.2d at 192.

Nor do the cases relied on by the majority support the application of the separability doctrine to appellant's equal protection claim. In *New York City Transit Authority v. Beazer*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979), plaintiffs challenged an employment policy of refusing to hire persons who use narcotics, including methadone. The district court reached outside the policy's scope to consider the constitutionality of its hypothetical application to former methadone users. The Supreme Court held that analysis should be confined to the constitutionality of the policy's application to current methadone users. The Court did not narrow the scope of the policy, but merely prohibited the district court from addressing situations not covered by the policy. In the present case, one need not hypothetically expand the clearly-marked bounds of the statute to find it applicable to homosexual conduct in private as well as in public.[3]

*Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), is also relied on to support the application of the separability doctrine to appellant's equal protection claim. However, the separability issue in *Craig* was whether a vendor of 3.2 beer in Texas could challenge the state statute prohibiting the sale of 3.2 beer to males under twenty-one and to females under eighteen on the ground that the statute violated the equal protection rights of males between the ages of eighteen and twenty-one. Unlike appellant in the present case, the challenger in *Craig* was not a member of the affected class.

The separability principles enunciated in *Beazer* and *Craig* thus are not applicable here. Appellant clearly is a member of the class against which he alleges discrimination by the unambiguous provisions of the Arkansas sodomy statute and should not be denied his right to challenge the facial constitutionality of the statute on equal protection grounds.

Having misapplied the separability doctrine, the majority concludes that because appellant's conduct was similarly punishable under the Arkansas public sexual indecency statute, he suffered no discrimination and, thus, no deprivation of equal protection. *Country v. Parratt, supra*, is cited as support for this novel approach. Such reliance, however, is misplaced. Although in *Country v. Parratt* this court did consider the constitutionality of the Nebraska forcible rape statute in the context of the entire criminal code, the court did so in order to determine whether the statute *on its face* discriminated against the class of people to whom it was applicable. The court concluded that the forcible rape statute did discriminate against men who rape women by exposing them to more severe penalties than persons who commit other types of sexual assault.[4] There is no suggestion in that case that if the individual challengers' conduct had been subject to similar punishment under a different statute, no discrimination would have been found. Indeed, the factual circumstances surrounding the challengers' arrests are not mentioned by the court; nor does the opinion reveal whether the individual challengers suffered discrimination by actually receiving more severe penalties than allowable under other statutes. Instead, the court applied the traditional equal protection guidelines as set forth in that case.

When the sodomy statute is viewed in the context of the Arkansas criminal code, it is clear that the statute discriminates against homosexuals by prohibiting private consensual sexual acts between adults of the same gender. Heterosexual couples who engage in identical behavior are not subject to

---

3. Although the majority notes "the absence of state court directions that the statute applies to both public and private acts," an interpretation limiting the sodomy statute's scope to public acts plainly ignores the explicit unambiguous language of the statute and results in statutory redundancy because public sexual acts are prohibited by the public sexual indecency statute.

A statement from an Arkansas court that the sodomy statute applies to private as well as public acts would be an unnecessary statement of the obvious.

4. The statute was upheld, however, on the ground that it was rationally related to a legitimate government interest.

criminal penalties under any provision of the criminal code. Thus, the uncontrovertible purpose of the sodomy statute is the regulation of consensual sexual activity between adults of the same gender. *Cf. Commonwealth v. Bonadio,* 490 Pa. 91, 415 A.2d 47, 49–50 (1980) (in view of other statutes proscribing public lewdness, rape, corruption of minors, etc., Pennsylvania sodomy statute deemed to have "only one possible purpose: to regulate the private conduct of consenting adults"). Construing appellant's offense as "public oral sexual activity" in order to uphold the constitutionality of the statute distorts the purpose of the sodomy statute and distorts the nature of the case.[5] In *Aptheker v. Secretary of State,* 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964), the Supreme Court cautioned that although a court will strain to construe a statute as constitutional, it cannot pervert the purpose of the statute by judicial rewriting; nor can it consider whether the legislature could have enacted a valid statute, but must ask whether it did enact a valid statute. *Id.* at 515, 84 S.Ct. at 1668.

The issue is, then, whether the sodomy statute's discrimination against homosexuals bears a rational relationship to any legitimate government interest.[6] The burden is on the government to prove the existence of such a relationship. *Wengler v. Druggists Mutual Ins. Co.,* 446 U.S. 142, 151, 100 S.Ct. 1540, 1545, 64 L.Ed.2d 107 (1980); *Country v. Parratt,* 684 F.2d at 590. The record reveals no attempt on the government's part to demonstrate factually to the district court a rational relationship between the proscription of homosexual conduct and a legitimate state interest. On appeal, the government and the state attorney general as amicus contend that the sodomy statute is rationally related to the promotion of morality and decency. However, mere naked assertions of public distaste or moral condemnation, without reference to evidence that public morality and decency are fostered by the statute, are insufficient to warrant bringing the weight of the criminal justice system to bear on consenting adults who engage in homosexual activity.[7] *Baker v. Wade,* 553 F.Supp. at 1145 (N.D.Tex.1982); *cf. Commonwealth v. Bonadio,* 415 A.2d at 50 (sodomy statute applicable only to unmarried persons unconstitutional); *People v. Onofre,* 51 N.Y.2d 476, 415 N.E.2d 936, 940–42, 434 N.Y.S.2d 947, 951–52 (1980). Moreover, the government has failed to establish that the asserted interests in public morality and decency, as well as public health, safety and decency, as well as public health, safety and welfare, are not fully protected by statutes prohibiting public sexual indecency, sex with minors and incompetents, and forcible sex.

For all that appears in the record before us, the sodomy statute serves no other purpose than the imposition of "a concept of private morality chosen by the State." *People v. Onofre,* 415 N.E.2d at 941, 434 N.Y.S.2d at 952. The statute is aimed at a class of people, homosexuals, by proscribing specific sexual conduct *only* if engaged in by persons of the same gender. "[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare [legislative] desire to harm a politically unpopular group cannot constitute a *legitimate* governmen-

---

5. According to the unmistakably clear language of the statute, the conduct with which appellant was charged, and for which he was convicted and sentenced, was engaging in oral sex with a person of the same gender. If, as the majority states, appellant was in fact convicted for "public oral sexual activity," he was charged and convicted under the wrong statute, thereby raising additional constitutional questions of due process. A conviction for public oral sexual activity, prohibited by Ark.Stat. Ann. § 41–1811, does not require that the participants be of the same gender, a necessary element under the sodomy statute, and does require the element of public location, an element not required under the sodomy statute.

6. Because on the record before us I think that the statute fails to meet this test, it is unnecessary to address appellant's contention that a higher level of scrutiny should be applied.

7. "The State's rationale must be something more than the exercise of a strained imagination; ... the connection between means and ends ... must have some objective basis." *Logan v. Zimmerman Brush Co.,* 102 S.Ct. at 1161.

tal interest." *United States Dept. of Agriculture v. Moreno,* 413 U.S. 528, 534, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973). The validity of this principle is unchanged when, as in this case, a statute's purpose is to discriminate against what may be a morally unpopular group.[8]

It is not necessary to go beyond "the real life factual situation at hand" in order to reach the conclusion, as I have, that appellant's right to equal protection has been violated. I would therefore reverse appellant's conviction on the ground that the Arkansas sodomy statute is unconstitutional.

---

8. It has been said that "[w]ith respect to regulation of morals, the police power should properly be exercised to protect each individual's right to be free from interference in defining and pursuing his own morality but not to enforce a majority morality on persons whose conduct does not harm others." *Commonwealth v. Bonadio,* 415 A.2d at 50.