# OPINIONS OF THE JUSTICES.

OPINION OF THE JUSTICES TO THE SENATE.

*Due Process of Law*, Vagueness of statute. *Sexual Preference. Words,*
"Sexual preference."

A proposed statute which would punish discrimination against persons on
the basis of their "sexual preference," but which contained no defini-
tion of that term, did not offend the standards of definiteness estab-
lished under art. 12 of the Massachusetts Declaration of Rights.
[1202-1206]

On January 3, 1984, the Justices submitted the following
answers to questions propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of
Massachusetts:

The Justices of the Supreme Judicial Court respectfully
submit their answers to the questions set forth in an order
adopted by the Senate on November 1, 1983, and trans-
mitted to this court on November 15, 1983, respecting
House Bill No. 6665, a bill pending before the Senate en-
titled: "An Act eliminating certain discrimination on the
basis of sexual preference." In its order the Senate noted
that the "bill provides criminal penalties for certain
discrimination based upon . . . a person's 'sexual
preference,'" that the bill does not include a definition of
sexual preference, and that "[g]rave doubt exists as to the
constitutionality of said bill which imposes criminal
penalties for . . . certain actions which are not specifically
defined in said bill."

The order asks the opinion of the Justices on the following
two questions:

"1. Whether the proposed law violates the provisions of Article XII of the Declaration of Rights of Part I of the Constitution of the Commonwealth in that it provides for criminal penalties without establishing a standard of behavior sufficiently definite to inform a person charged with its violation of the nature and extent of his offense?

"2. Whether the proposed law violates the provisions of said Article XII in that it imposes criminal penalties for discrimination based on 'sexual preference' without defining the term 'sexual preference'?"

We issued an announcement that briefs would be received up to and including December 12, 1983.[1]

Our constitutional duty as to advisory opinions extends to questions concerning the constitutionality of pending legislation and not to questions concerning legislation already enacted. *Answer of the Justices,* 373 Mass. 867, 870-872 (1977). *Opinion of the Justices,* 363 Mass. 889, 898 (1973). *Opinion of the Justices,* 314 Mass. 767, 770-772 (1943). Therefore, we answer the first question only as it relates to the addition of references to "sexual preference" in certain criminal statutes. As so limited, the first question and the second question are substantially the same, namely, whether the imposition of criminal penalties for discrimination based on "sexual preference" lacks sufficient definiteness to meet the requirement of art. 12 of the Declaration of Rights of the Constitution of the Commonwealth[2] that any stated criminal sanction convey "a definite warning of proscribed conduct — when measured by common understand-

---

[1] Briefs have been received from the Gay & Lesbian Advocates & Defenders, Inc., the Massachusetts Gay Political Caucus, the Massachusetts Teachers Association, and The First Church of Christ, Scientist, in Boston.

[2] Article 12 provides in pertinent part: "No subject shall be held to answer for any Crimes or offence, until the same is fully and plainly, substantially and formally, described to him."

ing and practices." *Opinions of the Justices,* 378 Mass. 822, 827 (1979). See *Commonwealth* v. *Bohmer,* 374 Mass. 368, 372 (1978); *Commonwealth* v. *Jarrett,* 359 Mass. 491, 496-497 (1971); *Commonwealth* v. *Slome,* 321 Mass. 713, 715 (1947).

The only provisions of House Bill No. 6665 concerned directly with criminal violations are §§ 13 and 14, set forth in the margin,[3] which add the words "sexual preference" to

[3] "SECTION 13. Section 92A of chapter 272 of the General Laws, as most recently amended by chapter 331 of the acts of 1978, is hereby further amended by striking out the first paragraph and inserting in place thereof the following paragraph: —

"No owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement shall, directly or indirectly, by himself or another, publish, issued [*sic*], circulate, distribute or display, or cause to be published, issued, circulated, distributed or displayed in anyway [*sic*], any advertisement, circular, folder, book, pamphlet, written, or painted or printed notice or sign, of any kind or description, intended to discriminate against or actually discriminating against persons of any religious sect, creed, class, race, color, denomination, sex, sexual preference, nationality, or because of deafness or blindness, or any physical or mental disability, in the full enjoyment of the accommodations, advantages, facilities or privileges offered to the general public by such places of public accommodation, resort or amusement."

"SECTION 14. Said chapter 272 is hereby further amended by striking out section 98, as most recently amended by section 2 of chapter 595 of the acts of 1979, and inserting in place thereof the following section: —

"*Section 98.* Whoever makes any distinction or restriction on account of race, color, religous [*sic*] creed, national origin, sex, sexual preference [*sic*] deafness, blindness, or any physical or mental disability or ancestry relative to the admission of any person to, or his treatment in, any place of public accommodation, resort or amusement, as defined in section ninety-two A, or whoever aids or incites such distinction, discrimination or restriction, shall be punished by a fine of not more than three hundred dollars or by imprisonment for not more than one year, or both, and shall forfeit to any person aggrieved thereby not less than one hundred nor more than five hundred dollars, but such person so aggrieved shall not recover against more than one person by reason of any one act of distinction, discrimination or restriction. All persons shall have the right to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, resort or amusement subject only to the conditions and limitations established by law and applicable alike to all persons. This right is recognized and declared to be a civil right."

The word "discrimination" appears to have been omitted inadvertently after the word "distinction" in the first line of the proposed new § 98.

statutes concerned with particular discriminations, distinctions, or restrictions relating to places of public accommodation, resort, or amusement. The first twelve sections of the bill propose amendments to G. L. c. 151B, concerning the functions of the Massachusetts Commission Against Discrimination (MCAD), and do not directly involve criminal violations. However, G. L. c. 151B, § 8, provides for criminal penalties for wilful violations of MCAD final orders. Also, the MCAD may seek judicial enforcement of its orders and the court in turn may "punish for contempt" any person violating its order or injunction. G. L. c. 151B, § 6. What we say about the words "sexual preference" proposed for insertion in G. L. c. 272, §§ 92A and 98, would apply generally to those words appearing in any MCAD final order or in any court order or injunction. The last three sections of the bill do not prescribe any criminal sanction.

We believe that the words "sexual preference" are not unconstitutionally vague with reference to the standards established under art. 12. We are not asked, of course, to express our opinion on the constitutionality of the phrase as applied in particular situations. See *Opinions of the Justices*, 378 Mass. 822, 825 (1979). Words may acquire sufficiently definite meaning through judicial use and interpretation. *Commonwealth* v. *Orlando*, 371 Mass. 732, 734 (1977). The Supreme Judicial Court has used the phrase in recent years. In *Macauley* v. *Massachusetts Comm'n Against Discrimination*, 379 Mass. 279 (1979), the court considered the question whether the MCAD had jurisdiction over a complaint based on the plaintiff's assertion that he was discriminated against in his employment because of his homosexuality. The court concluded that the MCAD did not have jurisdiction over "[d]iscrimination based on sexual preference." *Id.* at 281.[4] The Supreme Judicial Court also has used the

---

[4] The proposed bill by amendments to G. L. c. 151B would expand the MCAD's jurisdiction to include discrimination of the sort alleged in the *Macauley* case.

words "sexual preference" in the context of child custody
(*Bezio* v. *Patenaude*, 381 Mass. 563 [1980][5]), and in analyz-
ing a prosecutor's closing argument to a jury (*Common-
wealth* v. *Clary*, 388 Mass. 583 [1983][6]). The words have
been used elsewhere intelligibly without definition.[7] Where
a definition has been provided, it has meant male or female
homosexuality, heterosexuality, or bisexuality.[8]

---

[5] "Both parties introduced evidence to the effect that a mother's sexual
preference per se is irrelevant to a consideration of her parental skills." *Id.*
at 578.

[6] "[T]he prosecutor's insinuations regarding the defendant's sexual pref-
erence clearly were likely to instigate prejudice against her." *Id.* at 592.

[7] See *Matter of Petition for Naturalization of Longstaff*, 716 F.2d 1439,
1443 (5th Cir. 1983); *Hill* v. *United States Immigration & Naturalization
Serv.*, 714 F.2d 1470, 1473 (9th Cir. 1983); *United States* v. *Lemons*, 697
F.2d 832, 833 (8th Cir. 1983); *Manale* v. *New Orleans, Dep't of Police*,
673 F.2d 122, 124 (5th Cir. 1982); *Sommers* v. *Budget Mktg., Inc.*, 667
F.2d 748, 750 (8th Cir. 1982); *Hatheway* v. *Secretary of the Army*, 641
F.2d 1376, 1382 (9th Cir.), cert. denied, 454 U.S. 864 (1981); *Big Mama
Rag, Inc.* v. *United States*, 631 F.2d 1030, 1037 (D.C. Cir. 1980); *De
Tore* v. *Local 245 of Jersey City Pub. Employees Union*, 615 F.2d 980,
985 (3d Cir. 1980); *DeSantis* v. *Pacific Tel. & Tel. Co.*, 608 F.2d 327,
329-330 (9th Cir. 1979); *Smith* v. *Liberty Mut. Ins. Co.*, 569 F.2d 325,
326 (5th Cir. 1978); *Holloway* v. *Arthur Andersen & Co.*, 566 F.2d 659,
662 (9th Cir. 1977); *Koh* v. *Secretary of the Air Force*, 559 F. Supp. 852,
857, 860 (N.D. Cal. 1982); *Church of the Chosen People (N. Am. Panar-
chate)* v. *United States*, 548 F. Supp. 1247, 1253 (D. Minn. 1982); *Inosen-
cio* v. *Johnson*, 547 F. Supp. 130, 134 (E.D. Mich. 1982); *Lesbian/Gay
Freedom Day Comm., Inc.* v. *United States Immigration & Naturaliza-
tion Serv.*, 541 F. Supp. 569, 573 (N.D. Cal. 1982); *Childers* v. *Dallas
Police Dep't*, 513 F. Supp. 134, 136 (N.D. Tex. 1981); *Valdes* v. *Lumber-
men's Mut. Casualty Co.*, 507 F. Supp. 10, 11 (S.D. Fla. 1980); *ben-
Shalom* v. *Secretary of the Army*, 489 F. Supp. 964, 969, 973-974, 976
(E.D. Wis. 1980); *Cyr* v. *Walls*, 439 F. Supp. 697, 703 (N.D. Tex. 1977);
*Gay Law Students Ass'n* v. *Pacific Tel. & Tel. Co.*, 24 Cal. 3d 458, 488
(1979); *Florida Bd. of Bar Examiners Re N.R.S.*, 403 So.2d 1315, 1316
(Fla. 1981); *In re Florida Bd. of Bar Examiners*, 358 So.2d 7, 8 (Fla.
1978); *Bailey* v. *State*, 240 Ga. 112, 113 (1977); *Sommers* v. *Iowa Civil
Rights Comm'n*, 337 N.W.2d 470, 473 (Iowa 1983); *Big Brothers, Inc.* v.
*Minneapolis Comm'n on Civil Rights*, 284 N.W.2d 823, 827 (Minn.
1979); *Jacobson* v. *Jacobson*, 314 N.W.2d 78, 79 (N.D. 1981).

[8] The words "sexual orientation," which are synonymous with "sexual
preference," have been defined as follows: "'Sexual orientation' means hav-
ing a preference for heterosexuality, homosexuality . . . *or* bisexuality, hav-
ing a history of such a preference or being identified with such a preference"
(emphasis in original). Wis. Stat. Ann. § 111.32 (13m) (West Supp. 1983).

If, despite what we have said, any uncertainty remains, it can readily be dispelled by inserting an appropriate definition in the bill.

We answer the first question, as we have limited it, "No." We answer the second question, "No."

The foregoing answers are submitted by the Chief Justice and the Associate Justices subscribing hereto on the 30th day of December, 1983.

EDWARD F. HENNESSEY
HERBERT P. WILKINS
PAUL J. LIACOS
RUTH I. ABRAMS
JOSEPH R. NOLAN
NEIL L. LYNCH
FRANCIS P. O'CONNOR