Daniel Joseph YATES, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–79–691.

Court of Criminal Appeals of Oklahoma.

Oct. 23, 1980.

Demetri Anastasiadis, Asst. Public Defender, for appellant.

Jan Eric Cartwright, Atty. Gen., Oklahoma, David W. Lee, Asst. Atty. Gen., Chief, Criminal Division, for appellee.

## OPINION

BUSSEY, Judge:

We have consolidated the appeals from Oklahoma County District Court convictions in Case Nos. CRF–79–576, for Robbery With Firearms, and CRF–79–577, for Oral Sodomy, wherein punishment was fixed at twenty (20) years' imprisonment and ten (10) years' imprisonment respectively to be served consecutively. Appellant, Daniel Joseph Yates, hereinafter referred to as defendant asserts in his first assignment of error that his conviction for Oral Sodomy should be vacated for the reason that the testimony of victim J.G. was not sufficiently corroborated as required by 22 O.S.1971, § 742.

While it is true that a conviction cannot be had upon the uncorroborated testimony of an accomplice, it must be ascertained whether the witness could be indicted for the offense for which the accused is being tried. *Farrar v. State*, Okl.Cr., 505 P.2d 1355 (1973). When the facts as to whether the witness is or is not an accomplice are reasonably susceptible of either interpretation, the issue is for the jury to decide upon proper instruction. *McCormick v. State*, Okl.Cr., 464 P.2d 942 (1969).

In the case at bar there was no testimony presented supporting the proposition that the victim willfully engaged or passively engaged in the act of sodomy with the defendant. To the contrary, the uncontradicted facts clearly reveal that Mrs. G. and her husband were asleep in their bedroom on the date in question. At approximately 1:00 a. m. the lights therein were turned on awaking the couple to the presence of an armed intruder in their home. The couple was forced at gunpoint into another room of their home where they were tied with telephone cord. The intruder gathered together items belonging to the couple with which he later fled. Mrs. G. testified regarding the incident as follows:

Q. After this person came back into the room, started putting these items in a suitcase, what happened then?

A. He untied me and told me that he wanted to go back through the bedroom and he wanted to keep an eye on me, so he told me to go–to have me lead him back into the back bedroom.

Q. How were you tied up?

A. The telephone cord was around my feet and tied my hands with telephone cord.

Q. After he untied you, where did you go?

A. Into my husband and my bedroom.

Q. Did this person say anything to you after you got to the bedroom?

A. Yes, he did. He told me to sit on the bed and I sat down. He started rummaging through a few things and then he sat down on the bed next to me.

Q. Did he say anything at this point?

A. Yes, he did. He said, 'I want you to give me some head.'

Q. Did you say anything to him?

A. No, I didn't.

THE COURT: I didn't hear the word. Some what?

WITNESS: He said, 'I want you to give me some head.'

Q. (By Mr. Robinson) What did this person do after he said this?

A. He placed the shotgun on the wall in from of him and he sat on the bed and pulled his pants down.

Q. Did he say anything else to you at this time?

A. No. He just took my head and put his penis in my mouth.

Q. Did you want to do this?

A. No, I didn't.

Q. Did this person have an ejaculation?

A. Yes, he did.

Q. While his penis was still in your mouth?

A. Yes, sir.

Q. What was your physical condition at this time?

A. I was nine and a half months pregnant.

Q. By nine and a half, you mean you were overdue?

A. Yes, sir; two weeks.

Q. How long were you in this bedroom with this person?

A. About twenty minutes.

Q. Did you then leave the bedroom?

A. Yes, sir.

Q. Is that person with you when you leave the bedroom?

A. Yes, sir.

Q. Where were you taken?

A. Into the living room.

Q. What did this person do with you at this time?

A. Tied me back up.

As the record clearly shows Mrs. G. acted in response to threats of bodily harm or even death for herself and her husband and was not a passive nor consenting participant. Thus, it was unnecessary that her testimony be corroborated as a matter of law. Where evidence is clear and convincing that the outraged person was not an accomplice corroboration is not necessary to sustain a conviction of the crime of oral sodomy. *Sier v. State*, Okl.Cr., 517 P.2d 803 (1973).

In his next assignment of error the defendant contends that his sentences of ten years' imprisonment for oral sodomy and twenty years' imprisonment for robbery with firearms are excessive and should therefore be reduced by this Court. We do not agree.

We have stated on many occasions that a question of excessiveness of punishment is to be determined by a study of all the facts and circumstances surrounding each case and that this Court does not have the power to reduce a sentence unless we can conscientiously say that the sentence is so excessive as to shock the conscience of the Court. *Dodson v. State*, Okl.Cr., 562 P.2d 916 (1977); *Wade v. State*, Okl.Cr., 556 P.2d 275 (1976); *Webb v. State*, Okl.Cr., 538 P.2d 1054 (1975).

■ The punishment imposed on defendant is well within the limits provided by law and we do not deem sentences of ten years for oral sodomy and twenty years for robbery with firearms excessive under the facts in this case. Accordingly, defendant's second assignment of error it without merit.

Lastly, defendant contends that the in court identification of the defendant by Mrs. G. and her husband was tainted by pretrial irregularity, and that the alleged

pretrial irregularities when coupled with Mrs. G.'s testimony concerning the existence of, and description of, certain tattoos on the body of the defendant necessitate reversal.

█ In support of his argument defendant suggests that during a second session of viewing photographs it was irregular to allow the couple to view said photographs in each other's presence. Furthermore, neither witness made an identification of the defendant until one and three months respectively following the commission of the crimes. In this regard, defendant relies upon the United States Supreme Court decision of *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); and this Court's decision in *McDaniel v. State*, Okl. Cr., 576 P.2d 307 (1978). While it is true that any unnecessarily suggestive identification procedures may constitute a violation of the right to due process of law, *the in court identification is excludable only if the Court finds there was a constitutionally impermissible and suggestive pretrial viewing or confrontation. Neil v. Biggers*, supra; *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

█ In the instant case there was no line–up, and there was no evidence that would suggest any irregularities in the selection of the defendant's photograph nor any irregularity concerning the in–court identification at preliminary hearing. A time span of three months from the time the crimes were committed to the actual in court identification "does not create a" likelihood of misidentification. We are of the opinion and so hold that the in–court identifications were properly admitted, inasmuch as the victims had ample opportunity to observe defendant during the commission of the crimes, and had provided complete descriptions of their assailant.

Turning to the question of the tattoos, we observe that Mrs. G. was the victim of one of the most personally humiliating of all crimes. She testified that during this experience she had her eyes closed and although she was in a position to have observed the defendant's private part she did not and

therefore, would not have seen the tattoo of a swastika on defendant's penis. We also note that defendant did have a tattoo of a motorcycle on his left forearm which Mrs. G. had referred to as a Harley Davidson. This was a matter clearly for the jury's determination. In addition, the other tattoos which are reflected in Defense Exhibits 2 through 8 could not have been observed if defendant were clothed as the victims so testified he was. Defendant's final assignment of error is without merit.

For the reasons stated above the judgments and sentences appealed from should be, and the same are, hereby AFFIRMED.

CORNISH, P. J., and BRETT, J., concur.