Reginald COUNTRY, Appellant,

v.

Robert PARRATT, Warden, Appellee.

Willie FRANKLIN, Appellant,

v.

STATE OF NEBRASKA, Robert F. Parratt, Warden, Appellee.

Nos. 81–1764, 81–1808.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 18, 1981.

Decided Aug. 4, 1982.

Certiorari Denied Nov. 29, 1982. See 103 S.Ct. 461.

Stephen L. Ahl, of Barlow, Johnson, De-Mars, & Flodman, Lincoln, Neb., for appellant Reginald Country.

Paul L. Douglas, Atty. Gen., Terry R. Schaaf, Asst. Atty. Gen., Lincoln, Neb., for the State of Neb. its Agencies, and its Officers.

James E. McCabe, of Viren, Epstein, Leahy & Coren, Omaha, Neb., for appellant Willie Franklin.

Before LAY, Chief Judge, and HENLEY * and ARNOLD, Circuit Judges.

LAY, Chief Judge.

Reginald Country and Willie Franklin bring these appeals from the denial of con-

---

* The Honorable J. Smith Henley assumed senior status on June 1, 1982.

solidated petitions for a writ of habeas corpus. Judge Robert V. Denney denied Franklin's petition, but, in order to give the parties an opportunity to present evidence, preserved his challenge to the constitutionality of the Nebraska forcible rape statute. The case was subsequently consolidated with Country's petition which also challenged the constitutionality of the statute. Subsequently Chief Judge Warren K. Urbom denied relief under both petitions. These appeals followed. We affirm; our reasoning, however, differs somewhat from the district court's analysis.

*Challenge to the Statute.*

█ Franklin was convicted by a jury and Country pleaded no contest[1] under Neb.Rev.Stat. § 28–408 (1964). The provision which was subsequently replaced with a gender-neutral sexual assault law,[2] read in relevant part, "Whoever shall have carnal knowledge of any other woman, or female child, than his daughter or sister, as aforesaid, forcibly and against her will ... shall be deemed guilty of rape." As the district court found, this provision punishes only male perpetrators who attack female victims. Petitioners argue the statute deprives them of equal protection of law as guaranteed by the fourteenth amendment.[3]

In the Franklin case, Judge Denney deferred ruling on the constitutional issue in order to give the parties an opportunity to present evidence. At the subsequent hearing, the State did not present any evidence,

---

1. The State argues that Country, by pleading no contest to the charge in state court, waived his right to challenge the constitutionality of the statute. *Cf. Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (defendant who pleaded guilty cannot attack selection of grand jury in habeas petition).

However, in *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), a defendant who pleaded guilty subsequently claimed he was subjected to double jeopardy. The Court held:

A guilty plea ... renders irrelevant [only] those constitutional violations ... which do not stand in the way of conviction, if factual guilt is validly established. Here, however, the claim is that the State may not convict petitioner no matter how validly his factual guilt is established. The guilty plea, therefore, does not bar the claim.

*Id.* 423 U.S. at 63 n.2, 96 S.Ct. at 242 n.2. Under these principles, we conclude a plea of no contest does not preclude a defendant from claiming the statute under which he pleaded is unconstitutional.

2. The new law provides in part: "(1) Any person who subjects another person to sexual penetration and (a) overcomes the victim by force, threat of force, express or implied, coercion, or deception ... is guilty of sexual assault in the first degree." Neb.Rev.Stat. § 28–319 (1979). Thirty-four other states have adopted rape laws which apply equally to men and women. *See* Comment, Rape Laws, Equal Protection, and Privacy Rights, 54 Tulane L.Rev. 456, 459 (1980).

3. The record indicates that neither petitioner challenged the constitutionality of the statute in their original state trial or direct appeal. However, the State did not argue below nor does it now suggest that petitioners' failure to raise the issue at trial or on direct appeal bars collateral review absent a showing of "cause" and "prejudice." *See Engle v. Isaac*, —— U.S. ——, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

The record also indicates that neither petitioner raised the constitutionality of the statute in their collateral attacks in the state court. The federal district court initially dismissed Country's petition for failure to exhaust available state remedies, but granted a motion to reconsider. The court reasoned that state remedies were no longer available because Nebraska bars successive petitions raising issues which could have been raised in a prior petition. *See State v. Reichel*, 187 Neb. 464, 191 N.W.2d 826, 827–28 (1971). The district court also concluded pursuit of state remedies would be futile because the state supreme court had indicated, in dicta, it would reject a challenge to the rape law. *See State v. Newton*, 202 Neb. 361, 363, 275 N.W.2d 297, 298 (1979). The State does not challenge this ruling on appeal.

Franklin did not raise the constitutionality of the statute in his original habeas petition. The State admitted that, as to the issues originally raised, Franklin had exhausted state remedies. Franklin subsequently amended his petition to challenge the statute. The State did not raise the exhaustion issue as to this claim in the district court and does not do so on appeal.

Although we could raise these procedural issues sua sponte, we observe that the petitions have been pending in federal court for between two and four years. In the interest of both state and federal judicial economy and so as not to perpetuate the false hopes of petitioners, we address the merits of the issue.

but requested the court take judicial notice that only women can become pregnant and that men and women are anatomically different. The court took judicial notice of these facts.

The State then urged, as it does on appeal, that the statute was intended to achieve two legitimate objectives and that the gender-based statute substantially advanced those objectives. The alleged objectives were (1) prevention of pregnancy and (2) deterrence of physical injury of women caused by forcible sexual intercourse. The district court found both these objectives plausible. However, because the State presented no evidence indicating that women are more likely to sustain physical injuries when they are sexually assaulted by men than men are when sexually assaulted by women, the court found the State failed to meet its burden of proving the gender discrimination was substantially related to prevention of physical injuries. *Cf. Navedo v. Preisser*, 630 F.2d 636, 639–40 (8th Cir. 1980). Despite a complete lack of evidence concerning the pregnancy rationale, the court reasoned that some women who were raped before 1975 must have become pregnant and therefore the statute was substantially related to the prevention of "illegitimate pregnancies." [4]

We note that defendants have challenged forcible rape laws under the equal protection clause in several jurisdictions. In each instance the statute has been sustained. *See Hall v. McKenzie*, 575 F.2d 481, 484–85 (4th Cir. 1978); *Moore v. Cowen*, 560 F.2d 1298 (6th Cir. 1977), *cert. denied*, 435 U.S. 929, 98 S.Ct. 1500, 55 L.Ed.2d 525 (1978); *State v. Witt*, 310 Minn. 211, 245 N.W.2d 612 (1976); *State v. Craig*, 169 Mont. 150, 545 P.2d 649 (1976); *People v. Wheeler*, 50 A.D.2d 1089, 377 N.Y.S.2d 329 (1975); *Stewart v. State*, 534 S.W.2d 875 (Tenn. App.1975); *People v. Gould*, 188 Colo. 113, 532 P.2d 953 (1975); *Brooks v. State*, 24 Md.App. 334, 330 A.2d 670 (1975); *State v. Price*, 215 Kan. 718, 529 P.2d 85 (1974); *Finley v. State*, 527 S.W.2d 553 (Tex.Cr. App.1975); *People v. Medrano*, 24 Ill.App.3d 429, 321 N.E.2d 97 (1974); *State v. Kelly*, 111 Ariz. 181, 526 P.2d 720 (1974), *cert. denied*, 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411 (1975); *State v. Ewald*, 63 Wis.2d 165, 216 N.W.2d 213 (1974).

On appeal, the State first asserts that the statute does not create invidious discrimination on the basis of gender, but rather recognizes physical differences between men and women, and thus that the statute should not be subject to heightened scrutiny. *See Parham v. Hughes*, 441 U.S. 347, 353–57, 99 S.Ct. 1742, 1746–48, 60 L.Ed.2d 269 (1979) (different treatment of men and women suing for wrongful death of illegitimate child); *Moore*, 560 F.2d at 1303 (forcible rape); *Witt*, 245 N.W.2d at 616 (same). But the fact that the legislature chose to define the prohibited act in a manner such that only men could perform it does not relieve the state of its burden of justifying discriminating between the sexes. Equal protection analysis must always determine what the statute's purpose is, whether the objective is legitimate, and how relevant the differences between the classes are to the statute's goal. To merely assert that the sexes are not similarly situated in relevant respects and thus that the discrimination is not invidious is to import these necessary determinations into the

---

4. The status of the record in both the state and federal courts makes our analysis of the issue more difficult. Despite the opportunity provided by the district court, the State made no attempt to produce any evidence of the statute's purpose or the relationship between the statute and its purpose. Lack of evidence has been critical in constitutional scrutiny of statutory rape laws both in establishing the plausibility of proffered purposes and in proving laws substantially further their alleged objectives. *See, e.g., Navedo v. Preisser*, 630 F.2d 636 (8th

Cir. 1980). *Compare Meloon v. Helgemoe*, 564 F.2d 602 (1st Cir. 1977), *cert. denied*, 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978) *with Rundlett v. Oliver*, 607 F.2d 495 (1st Cir. 1979).

Because neither petitioner raised the issue in state court, we do not have the benefit of the state court's analysis of their legislature's purpose. Such an inquiry would have been entitled to great deference. *See Michael M. v. Superior Court*, 450 U.S. 464, 101 S.Ct. 1200, 1205, 67 L.Ed.2d 437 (1981).

choice of the level of scrutiny and thus to substitute assumption for analysis or, at least, to forego explication of the analysis. *Cf. Michael M. v. Superior Court*, 450 U.S. 464, 101 S.Ct. 1200, 1218–19 n.4, 67 L.Ed.2d 437 (1981) (Stevens, J., dissenting) (ultimately the same analysis is necessary in all cases). Women can perform equivalent acts as can those who attack persons of their own sex. The Nebraska legislature could and later did define the criminal conduct more broadly in order to eliminate the gender discrimination. The State must justify its choice to discriminate between men and women.

We agree with the district court's conclusion that the statute must be subjected to the "middle level" of scrutiny described in *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). *See Michael M.*, 101 S.Ct. at 1204; *Kirchberg v. Feenstra*, 450 U.S. 455, 101 S.Ct. 1195, 1198, 67 L.Ed.2d 428 (1981); *Wengler v. Druggists Mutual Insurance Co.*, 446 U.S. 142, 150, 100 S.Ct. 1540, 1545, 64 L.Ed.2d 107 (1980); *Personnel Administrator v. Feeney*, 442 U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979); *Caban v. Mohammed*, 441 U.S. 380, 388, 99 S.Ct. 1760, 1765, 60 L.Ed.2d 297 (1979); *Orr v. Orr*, 440 U.S. 268, 279, 99 S.Ct. 1102, 1111, 59 L.Ed.2d 306 (1979); *Califano v. Webster*, 430 U.S. 313, 316–17, 97 S.Ct. 1192, 1194, 51 L.Ed.2d 360 (1977). Under this standard, "classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig*, 429 U.S. at 197, 97 S.Ct. at 456.

Initially, we must determine what is the precise discrimination at issue. Only a male perpetrator who has carnal knowledge of a female victim could be convicted under Neb.Rev.Stat. § 28–408 (1964). The gender classification must, however, be analyzed within the context of the entire criminal code effective at the relevant time. *See*

*Michael M.*, 101 S.Ct. at 1208 (Stewart, J., concurring); *Craig*, 545 P.2d at 653; *Finley*, 527 S.W.2d at 556. A woman who perpetrated a comparable sexual assault involving a male or a female victim or a man who so assaulted another man would be punishable under other provisions of the criminal code. *See, e.g.*, Neb.Rev.Stat. § 28–411 (1964) (assault and battery), § 28–413 (1964) (assault with intent to inflict great bodily injury). Thus the issue is not whether it is permissible to punish only men and only when they sexually assault women, but whether it is permissible to create a separate category of offense based on gender and to punish men who sexually assault women more severely than other perpetrators of similar crimes.[5] *See Michael M.*, 101 S.Ct. at 1208 (Stewart, J., concurring) ("The question then is whether the Constitution prohibits a state legislature from imposing this *additional* sanction on a gender-specific basis.")

■ The criminal law consists of a multitude of categories of offenses which draw lines between types of conduct and attach different penalties to them. This grading of punishment is based on some notion of the severity of the harm caused by a particular type of conduct. The concepts of deterrence and retribution underlie the relationship between harm and punishment. The establishment of a distinct, gender-based category of sexual assault and the attachment of more severe penalties to conduct involving a male aggressor and female victim is justified if a male is likely to impose greater harm on a female or can impose a distinct type of harm on a female.

■ In the present case, we do not confront a statutory rape law with ambiguous and mixed objectives, *see Michael M.; Navedo; Meloon*. Each petitioner was convicted under the forcible rape statute. Although we do not have the benefit of legis-

---

5. A man who violated section 28–408 could be imprisoned for between three and twenty years while a person convicted of assault and battery could only be fined up to $500 or imprisoned up to six months and a person convicted of assault with intent to inflict great bodily injury could be imprisoned for between one and five years. Neb.Rev.Stat. §§ 28–408, 411, 413 (1964).

lative history or relevant decisions of the Nebraska Supreme Court, we deem the statutory purpose readily discernible from the words of the statute. We respectfully disagree with the State and the district court that the legislative purpose of the statute was to prevent unwanted pregnancies. Without evidence, to find prevention of unwanted pregnancy to be the objective of a forcible rape statute is a dangerously broad rationalization.[6] The statute authorizes punishment of men who sexually assault women. We think it readily apparent that the legislative purpose of the forcible rape statute was to deter men from physically and emotionally injuring women.

The creation of a gender-based category of crime involving heightened sanctions is substantially related to achievement of the usual purposes of criminal law if the crime creates a distinct type or a higher probability of harm than that created by similar conduct.[7] The district court judge indicated that he believed women rape victims are more susceptible to physical injury than male victims, however, he found that the State failed to prove this fact. The court did find that some women are likely to become pregnant as a result of rape. Although we find that prevention of unwanted pregnancy is not, standing alone, a plausible purpose of a forcible rape statute, the fact that only women can become pregnant and only if attacked by a man implies that a male assailant can impose a unique harm on a female victim. A male can impose the fear of and, in some cases, the actuality of an unwanted pregnancy. No woman can impose this harm on a man[8] and no assailant can impose this harm on a person of the same sex. Only women can become pregnant and thus only they can fear an unwanted pregnancy or be forced to undergo the physical, emotional, ethical, and financial consequences of such a pregnancy. *See Michael M.*, 101 S.Ct. at 1205;[9] *Finley*, 527 S.W.2d at 556; *Stewart*, 534 S.W.2d at 877; *Brooks*, 330 A.2d at 673; *Price*, 529 P.2d at 89; *Ewald*, 216 N.W.2d at 218. This dis-

6. As stated in *Meloon*:

> We examine the pregnancy prevention rationale with special wariness. Certainly the fact that women and not men bear children is a fundamental distinguishing characteristic of the two sexes and as such it can be the basis for some gender based legislation; but there is a danger that the very uniqueness of this characteristic makes it an available hindsight catchall rationalization for laws that were promulgated with totally different purposes in mind.

*Id.*, 564 F.2d at 607.

7. Undoubtedly, the assumption that an insignificant number of women sexually assault men and a similarly insignificant number of homosexual assaults occur, *see, e.g., Moore*, 560 F.2d at 1303; *Craig*, 545 P.2d at 653; *Finley*, 527 S.W.2d at 556, underlay the legislature's decision to punish only men who assault women. However, without evidence, the assumption is a sexual stereotype upon which gender classifications may not be based. *See Navedo*, 630 F.2d at 639–40. Even if the state could prove the proposition, it would not provide a basis for excluding non-male-female sexual assaults from this special criminal category. It would not hinder pursuit of the State's objective, deterrence of sexual assault, to include all categories of sexual assault in the provision at issue even though incidents in some categories may seldom occur. *See Michael M.*, 101 S.Ct. at 1215 (Brennan, J., dissenting) (state must prove that gender-based law furthers objective more than would sex-neutral law). In *Michael M.*, Justice Rehnquist accepts the State's unproven assertion that a gender-neutral statutory rape statute would be less effective because, if young women were potentially subject to criminal sanction, they would be less willing to report violation of the statute. 101 S.Ct. at 1206–07. This concern does not exist where consensual conduct is not punishable.

8. As Justice Brennan's dissent in *Michael M.*, 101 S.Ct. at 1215 n.4, suggests, a woman can potentially impose paternity upon a man, but she cannot force him to fear or undergo pregnancy.

9. This justification is distinct from the prevention of pregnancy justification accepted in *Michael M.* and seemingly asserted by the State in this case. That justification in the statutory rape context, is subject to the telling criticism that more pregnancies would be prevented if both parties were amenable to punishment. *See Michael M.*, 101 S.Ct. at 1216–17 (Brennan, J., dissenting), 1219 (Stevens, J., dissenting). The legitimate aim of a forcible rape statute is to heighten punishment of men for imposing a fear of *unwanted* pregnancy or imposing *unwanted* pregnancy not simply to reduce the number of pregnancies in general.

tinct type of harm constitutes and creates the greater probability of both physical and psychological damage which is precisely the type of factor which justifies heightened sanctions in the criminal law.[10]

The legislature may have had other motives for enacting and perpetuating this statute. The court cannot separate or weigh illicit and legitimate purposes. However, we find that the gender-based statute clearly had one primary and legitimate objective which it substantially advanced. Although we believe that it is important to dispel the sexual stereotypes and mythology underlying and surrounding rape laws, we also agree with the Maryland court of appeals that "[t]he equality of the sexes expresses a societal goal, not a physical metamorphosis. It would be anomalous indeed if our aspirations toward the ideal of equality under the law caused us to overlook our disparate human vulnerabilities." *Brooks*, 330 A.2d at 673. We find that under a forcible rape statute, for the reasons discussed, the State is justified in subjecting only male offenders who attack female victims to additional sanction over and above the penalties imposed on a female for comparable conduct. We hold the convictions of both petitioners under Neb.Rev.Stat. § 28–408 (1964) did not deprive them of equal protection of the laws.

*Other Issues.*

 Franklin, in addition to his attack on the constitutionality of the statute, asserts (1) that his counsel was ineffective under constitutional standards and (2) that a photographic display and lineup were suggestive and in violation of the due process clause. We need not write in detail on either point. We essentially affirm the findings of the district court and the reasoning set forth by the late district judge,

Robert V. Denney. Judge Denney properly found the photographic display was not suggestive and found that petitioner's identification was based on the victim's out of court identification. He wrote:

The reliability of the lineup identification is supported by the fact that the victim observed her assailant for nearly three hours, in broad daylight and at close range. During this time period, Joyce was paying close attention to her surroundings, as is evidenced by her detailed description of her ordeal. In addition, the lineup was held a short time after the incident. Thus, her recollection of her assailant's features was not diminished by the passage of time. Finally, the certainty with which she identified the petitioner provides further evidence of the reliability of her identification. Based on all of these factors, the Court finds that the lineup identification was reliable.

Petitioner similarly raises a number of challenges to his attorney's competence. We agree with Judge Denney that petitioner has not shown that any alleged act or omission of his counsel prejudiced him.

The orders of the district court denying the respective petitions of Franklin and Country are affirmed.

---

10. Defendants argue that if impregnation is an element of the statute's purpose, then the statute is overbroad because it applies to any forcible penetration and does not exempt sterile men or men who utilize contraceptive devices. But any penetration even one which cannot possibly cause impregnation is sufficient to place a woman in fear of impregnation. Defendants also argue that the statute is overbroad because it applies to assaults on women who cannot conceive. This type and degree of overbreadth does not contradict the asserted purpose of the statute and is not otherwise illegitimate.