**Martin Anthony EBERHART, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–82–277.**

Court of Criminal Appeals of Oklahoma.

Oct. 30, 1986.

James B. Browne, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., John O. Walton, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION ON REHEARING

BRETT, Judge.

Martin Anthony Eberhart was convicted in the District Court of Payne County, Case No. CRF–81–97, of one count of Rape, one count of Burglary, and two counts of Sodomy-Crime Against Nature, and received prison sentences of fifty (50) years' for Rape, twenty (20) years' for Burglary, and

1. Due to a 1983 amendment, the statute is now gender-neutral. *See* 21 O.S.Supp.1985, § 1111.

ten (10) years' on each count of Sodomy. On appeal, we affirm.

At approximately three o'clock in the morning of November 29, 1980, P.S.W. was awakened by a man standing over her bed. He told her he had a gun and would kill her if she did not "calm down and quit screaming." He also later threatened to hurt her two small children living in the house with her.

Thus began a sexual attack that would last at least four hours, encompass four rooms of the house, and include eight acts of intercourse, one act of anal sodomy and one act of oral sodomy. After the final assault, the assailant wrapped the victim in bed clothing, got dressed, and began rummaging through the dresser drawers. He asked her if she had any money or marijuana, and repeated his threats to her and her children if she reported the attack to the police.

At trial, the victim identified Eberhart as her attacker. She testified that this identification was based on two brief opportunities to view the man's face in the darkened house. Another witness, William O'Banion, identified the appellant at trial, and testified that from about a half block away, he saw appellant walking away from Ms. W's home about 7 a.m.

### I.

▇ Appellant first challenges the constitutionality of Oklahoma's forcible rape statute, 21 O.S.1971, § 1114, as it existed at the time of the crime.[1] He claims the statute violated the equal protection clauses of the United States and Oklahoma Constitutions, in that only males could be charged with rape and only females could be victims.

This Court previously considered the portion of Oklahoma's rape statute that punished males over the age of eighteen years for having sexual intercourse with females under a certain age.[2] *See Tubbs v. State,*

2. In *Mahorney v. State,* 664 P.2d 1042 (Okl.Cr. 1983), this Court unintentionally expanded the holding of *Tubbs* in finding that *Tubbs* resolved

631 P.2d 758 (Okl.Cr.1981). This Court, relying on *Michael M. v. Superior Court of Sonoma County*, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981), found the statute to be constitutional. Likewise, we now find the rest of Oklahoma's rape statute to pass constitutional muster.

Having considered the cases cited by both parties, this Court agrees with and hereby adopts the reasoning set forth in *Country v. Parratt*, 684 F.2d 588 (8th Cir. 1982). In that decision the Honorable Circuit Court stated, in part, the following:

The creation of a gender-based category of crime involving heightened sanctions is substantially related to achievement of the usual purposes of criminal law if the crime creates a distinct type or a higher probability of harm than that created by similar conduct.... A male can impose the fear of and, in some cases, the actuality of an unwanted pregnancy. No woman can impose this harm on a man and no assailant can impose this harm on a person of the same sex. Only women can become pregnant and thus only they can fear an unwanted pregnancy or be forced to undergo the physical, emotional, ethical and financial consequences of such a pregnancy.... This distinct type of harm constitutes and creates the greater probability of both the physical and psychological damage which is precisely the type of factor which justifies heightened sanctions in the criminal law.

\* \* \* \* \* \*

We find that under a forcible rape statute, ... the State is justified in subjecting only male offenders who attack female victims to additional sanction over and above the penalties imposed on a female for comparable conduct.

*Id.* at 592–93.

## II.

Next, appellant claims the trial judge committed error in denying his petition for change of venue. There is a pre-

sumption of law that a defendant can get a fair and impartial trial in the county in which the offense charged was committed. *Hammons v. State*, 560 P.2d 1024 (Okl.Cr. 1977). It has long been held that the grant or denial of a change of venue is within the sound discretion of the trial court, and the action of the trial judge will not be disturbed without a showing of abuse of discretion. *Andrews v. State*, 555 P.2d 1079 (Okl.Cr.1976). We do not find an abuse of discretion in the present case.

When the trial court overruled appellant's motion for change of venue, he agreed to change that ruling if, when trying to select a jury, it became obvious that pretrial publicity made it difficult or impossible to select a jury. All prospective jurors in the present case were extensively examined to elicit any prejudice. Many jurors admitted to having read articles concerning the case, but that fact alone is not sufficient to grant reversal. It is sufficient for a fair trial if the juror can lay aside his opinion and render a verdict based solely on evidence presented. *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Potential jurors who could not be impartial were excused. All jurors selected in this case testified they could be impartial. There was no need for the trial judge to change his ruling.

## III.

Appellant next asserts that the trial court committed reversible error by refusing to give a requested instruction cautioning the jury as to possible unreliability of the eyewitness identification in evidence. Recognizing that "[t]he vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification," *United States v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967), this Court has held that in cases in which identification is a critical element of the prosecu-

the question of constitutionality of the entire statute when *Tubbs* actually addressed only one

portion of the statute.

tion's case and serious questions exist concerning the reliability of that identification a cautionary instruction should be given. *McDoulett v. State,* 685 P.2d 978 (Okl.Cr. 1984).

In *McDoulett,* to give guidance as to when an instruction is necessary, we set out factors to consider, several of which were present in the instant case. The victim testified that she saw her attacker's face only on two brief occasions in her darkened bedroom. Witness O'Banion testified that, before sunrise, from over one-half block away, he saw a man on the victim's front lawn. Thus, neither of the identifying witnesses had a good opportunity to make a positive identification. Even more important, both witnesses also failed to identify appellant prior to trial. The victim failed to identify appellant in a physical line-up after picking him out of a photo line-up. O'Banion failed to positively identify appellant both in a photo line-up and at the preliminary hearing. The victim's description of her attacker did not match appellant in at least three respects: height, eye color, and the presence or absence of facial hair. O'Banion also failed to include facial hair in his description, but appellant had a full goatee and moustache at the time.

Thus, the jury needed to be warned of the possible unreliability of eyewitness identification. The jury was warned, however, by an expert witness who testified for the defense. The testimony was at least as effective as, if not much more effective than, a cautionary instruction would have been. To follow this testimony with an instruction from the court may have constituted an impermissible comment on the evidence. Refusing to give the instruction, under these circumstances, was not error.

### IV.

■ Appellant's fourth assertion of error is with regard to the prosecutor's cross-examination of alibi witnesses as to why they had not come forward with the alibi before trial, and remarks in his closing statements referring to that failure. It has long been this writer's opinion that

the failure of an alibi witness to voluntarily notify either a police officer or a member of the District Attorney's office of the whereabouts of the accused on the date in question is too highly ambiguous to amount to a prior inconsistent statement or inconsistent conduct with which the witness may be impeached.

*Glover v. State,* 531 P.2d 689, 694 (Okl.Cr. 1975) (Brett, J., dissenting). *See also Black v. State,* 664 P.2d 1054, 1058 (Okl.Cr. 1983) (Brett, J., dissenting).

In this case, however, the evidence was so strong that the prosecutor's attempt to thusly impeach the alibi witnesses did not affect the verdict. In addition to the eyewitness identifications of Eberhart, the State presented persuasive physical evidence. Both antigen A and antigen H were found on a cigarette butt left by the assailant. Another cigarette butt, the same brand and type, smoked by the appellant after the preliminary hearing, was examined and the same antigens were found. A vaginal swab taken after the assault also showed the presence of sperm and of these antigens. The victim, who has blood type O, could possibly secrete antigen H but not antigen A. The appellant has blood type A, definitely secretes antigen A, and possibly secretes antigen H.

Three scalp hairs found on the appellant's shirt at the time of arrest matched scalp hairs taken from the victim. A scalp hair found on the victim's sweater or blouse matched the appellant's scalp hair. Two pubic hairs taken from the sheets on the victim's bed were matched to the appellant's pubic hair.

None of the witnesses in this case—defense or prosecution—had a clear memory or knowledge of the exact time of the offense or of exact times concerning Eberhart's whereabouts. In light of the overwhelming evidence and the uncertainty of the alibi testimony, the error did not result in a miscarriage of justice and is therefore not reversible. *See* 20 O.S.1981, § 3001.1.

## V.

Appellant's fifth assignment of error alleges that the trial court committed error by allowing the victim and Witness O'Banion to identify appellant at trial.

■ The only reason for excluding in-court identifications is that they are "tainted" by improper out-of-court identifications. The United States Supreme Court said in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968):

> [C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Id.* at 384, 88 S.Ct. at 971. *See also Yates v. State*, 620 P.2d 413 (Okl.Cr.1980).

■ Thus, the contention that Witness O'Banion's identification should be excluded can be immediately dismissed, as he made no pretrial identification that could have "tainted" his in-court identification. While reliability has been the focus of most recent cases dealing with the question, *e.g.*, *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Gregg v. State*, 662 P.2d 1385 (Okl.Cr.1983), there must be a threshold determination of whether the pre-trial identification was in fact suggestive. We find that the pre-trial identification procedure was not suggestive, and therefore, need not decide its reliability.

## VI.

■ As his sixth assignment of error, appellant makes a double jeopardy claim against being tried on two counts of sodomy arising from a single transaction. Both counts allege a violation of 21 O.S. 1981, § 886, Crime Against Nature, which provides:

> Every person who is guilty of a detestable and abominable crime against nature, committed with mankind or with a beast, is punishable by imprisonment in the penitentiary not exceeding ten years.

Appellant Eberhart was charged with two counts of sodomy under the statute: one for oral sodomy and one for anal sodomy. His contention is that since the two acts on which the charges were based arose out of a single uninterrupted incident, they should be treated as a single offense.

On facts similar to these, this Court has held that where the record clearly reveals two separate acts of sodomy, they constitute two distinct offenses. *Clark v. State*, 678 P.2d 1191 (Okl.Cr.1984). As that case is controlling, appellant's proposition six must fail.

## VII.

■ Appellant's seventh assignment of error is that it was erroneous for the trial judge to permit the prosecutor to cross-examine defendant in detail regarding his prior conviction for rape and sodomy. The general rule is that when a defendant is put on trial for one offense, he is to be convicted, if at all, by evidence showing his guilt of that offense alone, and evidence of other crimes is inadmissable. *Moulton v. State*, 476 P.2d 366 (Okl.Cr.1970). However, 12 O.S.1981, § 2404(B) codifies the five common law exceptions to the general rule. Evidence of other crimes may be admitted to establish: 1) motive; 2) intent; 3) absence of mistake or accident; 4) identity; and/or, 5) a common scheme or plan. *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979). In the instant case, the fourth exception, identity, was applied to admit evidence. We hold this was a proper application of the rule.

■ In past cases this Court has deemed evidence which demonstrates a highly distinctive method of operation as a factor which is relevant in determining the guilt or innocence of the accused. *Turnbow v. State*, 451 P.2d 387 (Okl.Cr.1969). Such evidence is admissible if the peculiar method of operation is so unusual and distinctive as to be like a signature. *Driver v. State*, 634 P.2d 760 (Okl.Cr.1981); *Rhine v. State*, 336 P.2d 913 (Okl.Cr.1958).

Such a highly peculiar method of operation is present in this case. The following is a brief summation of some of the similarities, as pointed out by the State in its brief, between the present case and Case No. CRF–79–235, affirmed in our unpublished opinion *Eberhart v. State*, No. F–81–12 (Okl.Cr.Dec. 9, 1982):

1) Both victims resided in Cushing, Oklahoma;

2) Both victims were divorcees who resided alone with their two small children;

3) Both victims were attacked in their homes in the early morning hours;

4) In each case the sexual assault began in the victim's bedroom and lasted approximately four hours;

5) In each case, after raping the victim, the attacker took the victim to the bathroom and attempted an act of anal sodomy;

6) In each case the victim was raped in the living room;

7) In each case the victim was forced into the kitchen;

8) In each case the victim was forced to orally copulate the assailant;

9) In each case the rapist's penis was described as being crooked. (Evidence admitted at trial disclosed that the defendant does, in fact, have a slightly crooked penis);

10) Both victims gave the same general physical description of their attacker;

11) In each case the first comment made by the intruder to the victim was that if she screamed or resisted she would be killed;

12) In the present case, the victim lived next door to friends of the appellant. In the prior case, the victim lived across the street from the appellant's grandmother;

13) In each case the appellant failed to report for work the next day following the rape;

14) In each case, the assailant completed the sexual assaults in the victim's bedroom and then covered the victim with bed clothing to prevent her seeing him;

15) In each case, after finishing the sexual assaults and covering the victim with bed clothing, the intruder searched the dresser drawer in the victim's bedroom and asked the victim if she had any money.

In view of these many similarities, the evidence of the prior rape conviction was relevant as an aid in determining the identity of the assailant in the present case and was properly admitted.

## VIII.

Appellant's final proposition would have this Court adopt the role of advocate and review the entire record for errors not otherwise briefed. That is something this Court will not do, and the proposition must fail.

Having found no error meriting reversal or modification, the judgment and sentence is AFFIRMED.

BUSSEY, J., concurs.