Mario R. LIBERTA, Petitioner–Appellant,

v.

Walter R. KELLY, Superintendent, Attica Correctional Facility, Respondent–Appellee.

No. 185, Docket 87–2199.

United States Court of Appeals, Second Circuit.

Argued Sept. 14, 1987.

Decided Feb. 9, 1988.

---

R. Nils Olsen, Jr., Buffalo, N.Y., for petitioner-appellant.

Jo W. Faber, Asst. Dist. Atty. for Erie County, Buffalo, N.Y. (Richard J. Arcara, Dist. Atty. for Erie County, Buffalo, N.Y., John J. DeFranks, Asst. Dist. Atty., of counsel), for respondent-appellee.

Before CARDAMONE, WINTER and MINER, Circuit Judges.

WINTER, Circuit Judge:

A jury in the Supreme Court of New York for Erie County convicted Mario R. Liberta of forcibly raping and sodomizing his estranged wife in violation of N.Y. Penal Law §§ 130.35(1) and 130.50(1) (McKinney 1987). The rape statute, N.Y. Penal Law § 130.35, provided that only men could be convicted of rape. In addition, although both the rape and sodomy statutes exempted from criminal liability individuals committing forcible sexual acts upon their spouses, Liberta was considered unmarried under the statutes because he had been ordered by a family court to live apart from his wife. On direct appeal, Liberta argued that the evidence against him was insufficient to support the convictions and that, in any event, New York's rape and sodomy statutes violated the New York and federal equal protection clauses. The New York Court of Appeals held that the statutes were unconstitutional as originally drafted but nevertheless affirmed Liberta's conviction by excising the gender and marital exemptions instead of invalidating the statutes in their entirety. *People v. Liberta*, 64 N.Y.2d 152, 474 N.E.2d 567, 485 N.Y.S.2d 207 (1984), *cert. denied*, 471 U.S. 1020, 105 S.Ct. 2029, 85 L.Ed.2d 310 (1985).

Liberta subsequently filed a petition for a writ of habeas corpus in the Western District of New York. He argued once again that the evidence against him was insufficient and that his convictions violated the due process clause of the fourteenth amendment because they had been obtained under what were essentially newly created statutes. In addition, Liberta contended that the rape and sodomy statutes as originally drafted violated the federal equal protection clause. Chief Judge Curtin rejected both contentions. *Liberta v. Kelly*, 657 F.Supp. 1260 (W.D.N.Y.1987). We affirm.

## BACKGROUND

Mario Liberta and Denise Liberta were married on March 19, 1978. Soon after the birth of their only child, Michael, Mario began to beat Denise. Consequently, after about one year of marriage, Denise obtained a judicial order ordering Mario to stay away from her. The couple continued to live together sporadically, although Denise obtained at least two other protective orders from a family court. The second of these protective orders, dated September 4, 1980, again required Mario to live apart from Denise but allowed him to visit Michael on weekends. After missing his visit on the previous Saturday, Mario persuaded Denise to allow him to visit Michael on Tuesday, March 24, 1981, by promising her that a friend of his would attend. Mario and his friend Joe Meli then brought Denise and Michael to the Mohawk Motor Inn, where Mario was living. Meli left the motel, however, while Mario, Denise and Michael went to Mario's room. Denise testi-

fied that once they entered the room, Mario forced Denise to perform oral sex upon him as their son watched. Mario then raped Denise.

After a jury trial, Mario Liberta was convicted of rape and sodomy. The rape statute under which he was convicted, N.Y. Penal Law § 130.35, provides that "[a] *male* is guilty of rape in the first degree when he engages in sexual intercourse with a female ... [b]y forcible compulsion" (emphasis added); a "female" under the statute is defined as "any female person who is *not married to the actor.*" N.Y. Penal Law § 130.00(4) (McKinney 1987) (emphasis added). The sodomy statute, N.Y Penal Law § 130.50, provides that "[a] person is guilty of sodomy in the first degree when he engages in deviate sexual intercourse with another person ... [b]y forcible compulsion"; "deviate sexual intercourse" is defined as "sexual conduct between persons *not married to each other* consisting of contact between the penis and the anus, the mouth and penis, or the mouth and the vulva." N.Y. Penal Law § 130.00(2) (emphasis added). Thus, as the New York Court of Appeals explained, "due to the 'not married' language in the definitions of 'female' and 'deviate sexual intercourse,' there is a 'marital exemption' for both forcible rape and forcible sodomy." *People v. Liberta,* 64 N.Y.2d at 159, 474 N.E.2d at 570, 485 N.Y.S.2d at 210. This exemption, however, does not apply to every legally married couple. In particular, a husband and wife are not considered to be married if, at the time of the sexual assault, they "are living apart ... pursuant to a valid and effective ... order issued by a court of competent jurisdiction which by its terms or in its effect requires such living apart." N.Y. Penal Law § 130.00(4)(b)(i).

The Appellate Division of the Supreme Court of New York, Fourth Department, affirmed Liberta's conviction, *People v. Liberta,* 100 A.D.2d 741, 473 N.Y.S.2d 636 (1984), and the New York Court of Appeals granted leave to appeal. The Court of Appeals held that both the exemption of women from criminal liability for rape and the marital exemption contained in the rape and sodomy statutes violated the equal protection clauses of both the federal, U.S. Const. amend. XIV, § 1, and New York, N.Y. Const. art. I, § 11, constitutions. The Court of Appeals found that "there is no rational basis for distinguishing between marital rape and nonmarital rape," and that "[t]he various rationales which have been asserted in defense of the exemption are either based upon archaic notions about the consent and property rights incident to marriage or are simply unable to withstand even the slightest scrutiny." 64 N.Y.2d at 163, 474 N.E.2d at 573, 485 N.Y.S.2d at 213. The court also held that the fact that N.Y. Penal Law § 130.35 proscribed only rapes committed by men rendered that provision unconstitutional. The court concluded that the State of New York had failed to meet its burden of providing an " 'exceedingly persuasive justification' " for the gender-based classification contained in Section 130.35. *Id.* at 170, 474 N.E.2d at 577, 485 N.Y.S.2d at 217 (quoting *Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 724, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982)).

The Court of Appeals nevertheless affirmed Liberta's convictions. Observing that "the unconstitutionality of one part of a criminal statute does not necessarily render the entire statute void," *id.,* at 64 N.Y. 2d at 170–71, 474 N.E.2d at 578, 485 N.Y.S. 2d at 218, the court elected to "strik[e] the marital exemption from sections 130.35 and 130.50 of the Penal Law and the gender exemption from section 130.35 of the Penal Law, so that it is now the law of this State that any person who engages in sexual intercourse or deviate sexual intercourse with any other person by forcible compulsion is guilty of either rape in the first degree or sodomy in the first degree." *Id.* at 172, 474 N.E.2d at 578–79, 485 N.Y.S.2d at 218–19. The court concluded that Liberta's convictions could be affirmed "[b]ecause the statutes under which the defendant was convicted are not being struck down." *Id.,* 474 N.E.2d at 579, 485 N.Y.S.2d at 219. The court held that its decision did not deprive Liberta of due process, because "his conduct was covered by

the statutes as they existed at the time of his attack on Denise." *Id.* at 173, 474 N.E.2d at 579, 485 N.Y.S.2d at 219. Moreover, the court stated that the affirmance did not deny Liberta equal protection:

> Neither can it be said that by the affirmance of his conviction the defendant is deprived of a constitutionally protected right to equal protection. The remedy chosen by our opinion is to extend the coverage of the provisions for forcible rape and sodomy to all those to whom these provisions can constitutionally be applied. While this remedy does treat the defendant differently than, for example, a married man who, while living with his wife, raped her prior to this decision, the distinction is rational inasmuch as it is justified by the limitations imposed on our remedy by the notice requirements of the due process clause (US Const, 14th Amdt), and the prohibition against ex post facto laws (US Const, art. I, § 10). Thus, for purposes of choosing the proper remedy, the defendant is simply not similarly situated to those persons who were not within the scope of the statutes as they existed prior to our decision.

> To reverse the defendant's conviction would mean that all those persons now awaiting trial for forcible rape or sodomy would be entitled to dismissal of the indictment. Indeed if we were to reverse no person arrested for forcible rape or sodomy prior to the date of this decision could be prosecuted for that offense, and every person already convicted of forcible rape or sodomy who raised the equal protection challenge would be entitled to have the conviction vacated. As the equal protection clause does not require us to reach such a result, we decline to do so.

*Id.,* 474 N.E.2d at 579–80, 485 N.Y.S.2d at 219–20. After the Supreme Court denied

his petition for a writ of certiorari, *Liberta v. New York,* 471 U.S. 1020, 105 S.Ct. 2029, 85 L.Ed.2d 310 (1985), Liberta filed the petition for a writ of habeas corpus that is the subject of this appeal.

## DISCUSSION

Liberta once again challenges the constitutional sufficiency of the evidence against him.[1] He contends that forcible compulsion, an element of both rape and sodomy under New York law, was not proven. He also claims that the prosecution did not adduce sufficient evidence supporting a finding that he and his wife were living apart "pursuant" to a protective order. *See* N.Y. Penal Law § 130.00(4)(b)(i). These contentions are without merit.

The "relevant question," of course, "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). As to the element of forcible compulsion, Denise testified that Mario threatened at least twice to kill her and at least once to kill her son if she did not stop screaming during the rape. Mario himself admitted that when Denise entered his motel room he immediately grabbed her by her hair and slapped her several times. As to the effect of the protective order, Mario conceded that his living apart from Denise was related to the protective order. He even testified that "whenever [he and Denise] got in arguments she would go in the dresser and get the Court Order and tell me to leave, and I would have to leave." The evidence therefore amply supports the jury's conclusion that Mario forcibly compelled his wife to engage in sexual

---

1. The parties disagree over whether Liberta's sufficiency claim was exhausted in the New York courts. On direct appeal, Liberta contended that "the trial verdict was against the weight of the evidence." In respondent's view, this did not amount to a fair presentation of Liberta's constitutional sufficiency claim; according to respondent, "weight" is to be distinguished from "sufficiency." This argument is frivolous. As

we have previously noted, the New York courts, when reviewing the evidence in support of a criminal conviction, have consistently adhered to a standard that is virtually identical to the standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). *See Hawkins v. West,* 706 F.2d 437, 440 (2d Cir.1983); *LaBruna v. U.S. Marshal,* 665 F.2d 439, 442 n. 3 (2d Cir.1981).

acts and that they were at the time living apart pursuant to a protective order.

■ Liberta next contends that the New York Court of Appeals denied him due process when it affirmed his convictions by excising the marital and gender exemptions. He argues that application of these revamped statutes to him amounts to the imposition of punishment for crimes for which he was neither charged nor convicted. We disagree. As the New York Court of Appeals concluded, petitioner had "fair warning" that his actions were criminal, and was thus afforded due process. *See Bouie v. City of Columbia*, 378 U.S. 347, 355, 84 S.Ct. 1697, 1703, 12 L.Ed.2d 894 (1964). Liberta's actions clearly fell within the scope of the statutes as originally drafted, and the expansion did not deprive him of due process.

We must nevertheless address the federal equal protection issues raised because the excision "remedy" applied by the New York Court of Appeals is simply not a remedy with regard to persons, like Liberta, who were convicted under the pertinent statutes before excision occurred. The Court of Appeals conceded that the "remedy" it chose "does treat the defendant differently than, for example, a married man who, while living with his wife, raped her prior to this decision." *People v. Liberta*, 64 N.Y.2d at 173, 474 N.E.2d at 579, 485 N.Y.S.2d at 219. By the same token, the remedy also treats Liberta differently than a woman who raped a man before the court's decision. The court nevertheless held these differences in treatment did not violate Liberta's New York or federal equal protection rights because they are "rational inasmuch as justified by the limitations imposed on our remedy by the requirements of the due process clause ... and the prohibition against ex post facto laws." *Id.*, 474 N.E.2d at 579, 485 N.Y.S.2d at 219. The court also noted that if a live equal protection issue existed, all rapists and sodomists previously convicted under the statutes in question would have to be released.

The rationale of the Court of Appeals was thus that Liberta's New York and federal equal protection rights were not violated because the court lacked the constitutional power to expand the statute retroactively to bring about the prosecution of the previously exempted groups. The meaning of the New York equal protection clause is not for us to determine. However, we cannot agree that this lack of power validates what may otherwise be unconstitutional under the federal equal protection clause. Before the Court of Appeals' decision, the distinctions it held to be unconstitutionally discriminatory were the law in New York and in full force when Liberta was convicted. His conviction is thus a result of the precise discrimination invalidated by the court, and his federal equal protection claim cannot be avoided because courts lack power to apply judicially expanded criminal statutes retroactively. Had the original New York rape and sodomy legislation applied only to black persons, for example, its later expansion by the New York Court of Appeals to persons of all races would not validate the convictions of blacks that occurred before the judicial expansion.

Accordingly, we must address the constitutionality under the federal equal protection clause of the original versions of N.Y. Penal Law §§ 130.35 and 130.50. We need not, however, determine the constitutionality of including a marital exemption in a rape or sodomy statute because the issue is not raised by the facts of this case. Liberta conceded before the New York Court of Appeals and concedes here that he cannot raise such a challenge because he is a married man who raped and sodomized his wife, and such an exemption might aid him in escaping his conviction. Indeed, he argued throughout that he fell within New York's marital exemption. Instead, Liberta claims that he was denied equal protection by the state's recognition of a distinction within the exemption between married men living apart from their wives pursuant to a protective order and other, exempted married men.

■ Liberta thus contends that, assuming the constitutionality of the marital exemption, no rational basis exists for excluding from such an exemption married men

who are living apart from their wives pursuant to valid protective orders. This contention is without merit. A state is certainly entitled to conclude that a husband already ordered by a court to live apart from his wife, often as the result of his physically or sexually abusive conduct, represents a far greater threat to her safety than does a husband not subject to a protective order. Accordingly, New York might reasonably have concluded that the law should pose a greater deterrent to marital rape or sodomy for husbands who are subject to such protective orders.[2] Since the goal of deterring forcible rape and sodomy is unquestionably a valid legislative objective, the New York Penal Law's distinction between married men who are subject to protective orders and those who are not "rationally furthers a legitimate state purpose." *Hooper v. Bernalillo County Assessor*, 472 U.S. 612, 618, 105 S.Ct. 2862, 2866, 86 L.Ed. 2d 487 (1985).

We turn next to Liberta's claim that the limitation in Section 130.35's prohibition of rape to males violates the equal protection clause. The Supreme Court has consistently held that a "party seeking to uphold a statute that classifies individuals on the basis of their gender must carry the burden of showing an 'exceedingly persuasive justification' for the classification." *Mississippi Univ. for Women v. Hogan*, 458 U.S. at 724, 102 S.Ct. at 3336 (quoting *Kirchberg v. Feenstra*, 450 U.S. 455, 461, 101 S.Ct. 1195, 1199, 67 L.Ed.2d 428 (1981)). "The burden is met only by showing at least that the classification serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.'" *Id.* (quoting *Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 150, 100 S.Ct. 1540, 1545, 64 L.Ed.2d 107 (1980)). "This test imposes a lower standard than the 'strict scrutiny' test used for classifications such as race ... but ... a higher standard than the minimal rationality test traditionally required for legislative classifications not involving either gender or an 'inherently suspect' categorization." *Manufacturers Hanover Trust Co. v. United States*, 775 F.2d 459, 464 (2d Cir. 1985), *cert. denied*, 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986). Moreover, the equal protection clause does not "demand that a statute necessarily apply equally to all persons" or "'require things which are different in fact ... to be treated in law as though they were the same.'" *Rinaldi v. Yeager*, 384 U.S. 305, 309, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966) (quoting *Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940)). Accordingly, a statute containing a gender-based classification must be upheld "where the gender classification is not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances." *Michael M. v. Superior Court*, 450 U.S. 464, 469, 101 S.Ct. 1200, 1204, 67 L.Ed.2d 437 (1981) (plurality opinion).

We disagree with the New York Court of Appeals' failure to give any weight to the very realistic concerns that underlie Section 130.35's application only to males.[3] In particular, we cannot agree with the dismissal of the argument that rape of males by females is so extraordinary or even nonexistent as not to warrant specific legislative concern. The court stated:

The argument is premised on the notion that a man cannot engage in sexual intercourse unless he is sexually aroused, and if he is aroused then he is consenting to intercourse. "Sexual intercourse" however, "occurs upon any penetration, however slight" (Penal Law, § 130.00); this degree of contact can be achieved with-

---

**2.** The New York Penal Law does not completely immunize married husbands who lawfully live with their wives from criminal liability for acts of rape or sodomy. Such married men remain subject to prosecution under the statutes governing coercion. *See* N.Y. Penal Law §§ 135.60–.65 (McKinney 1987).

**3.** We note that New York long has imposed criminal liability on females for rape where a female has aided and abetted a male in the commission of the offense. N.Y. Penal Law §§ 20.00, 20.05(3), 130.35; *see, e.g., People v. Evans*, 58 A.D.2d 919, 396 N.Y.S.2d 727 (1977). Liberta's equal protection claim is not directed to this sort of liability.

out a male being aroused and thus without his consent.

*People v. Liberta,* 64 N.Y.2d at 169, 474 N.E.2d at 577, 485 N.Y.S.2d at 217. We note that the Court of Appeals made no claim that evidence of female rapes of males actually exists. We also note that the definition of "sexual intercourse" as involving "any penetration, however, slight" is necessary to prevent males from raising defenses concerning completion of an act of sexual intercourse. The fact that that definition creates a possibility of female rape does not render Section 130.35 unconstitutional where such events are virtually or wholly nonexistent. As Chief Justice Rehnquist has observed, "[t]he relevant inquiry ... is not whether the statute is drawn as precisely as it might have been, but whether the line chosen by the [legislature] is within constitutional limitations." *Michael M.,* 450 U.S. at 473, 101 S.Ct. at 1206 (plurality opinion). Certainly the Constitution does not require legislatures to anticipate virtually nonexistent or purely hypothetical events in drafting penal statutes. Indeed, we find it inconceivable that males who rape should go free solely because the legislature focused on a real problem, rape of women by men, with verified attendant physical and psychological trauma, and failed to act on a hypothetical problem, rape of men by women.

We also disagree with the New York Court of Appeals's dismissal of the state's argument that women who are raped also face the danger of unwanted pregnancy. As the Eighth Circuit has observed:

> Although ... prevention of unwanted pregnancy is not, standing alone, a plausible purpose of a forcible rape statute, the fact that only women can become pregnant and only if attacked by a man implies that a male assailant can impose a unique harm on a female victim. A male can impose the fear of and, in some cases, the actuality of an unwanted pregnancy. No woman can impose this harm on a man and no assailant can impose this harm on a person of the same sex. Only women can become pregnant and thus only they can fear an unwanted pregnancy or be forced to undergo the physical, emotional, ethical, and financial consequences of such a pregnancy.

*Country v. Parratt,* 684 F.2d 588, 592 (8th Cir.), *cert. denied,* 459 U.S. 1043, 103 S.Ct. 461, 74 L.Ed.2d 612 (1982); *see also United States v. Davis,* 785 F.2d 610, 614 (8th Cir.1986); Model Penal Code § 213.1 comment at 338 (1985); *cf. Michael M.,* 450 U.S. at 471–73, 101 S.Ct. at 1205–06 (plurality opinion) (states may enact statutory rape law applicable only to males in order to deter teenage pregnancies).

Women and men thus are not similarly situated with regard to rape. Rape is unquestionably a crime that requires male participation as a practical matter, and only male rape of a female can impose on the victim an unwanted pregnancy. These facts, in our view, provide an "exceedingly persuasive justification," *Mississippi Univ. for Women v. Hogan,* 458 U.S. at 724, 102 S.Ct. at 3336, for a statute that provides heightened sanctions for rapes committed by men. Moreover, it cannot be contended that a rape statute punishing only men "demean[s] the ability or social status" of either men or women, *Parham v. Hughes,* 441 U.S. 347, 354, 99 S.Ct. 1742, 1747, 60 L.Ed.2d 269 (1979), particularly in the context of a penal code that prohibits coercive sexual conduct by women. The exclusion of women from the scope of Section 130.35, therefore, does not deny men equal protection of the laws.

Affirmed.

CARDAMONE, Circuit Judge, concurring:

The district court denied petitioner's writ of habeas corpus. I vote to affirm that denial on the following grounds. The New York Court of Appeals held that the marital exemption to the rape and sodomy statutes and the gender-specificity of the rape statute each violates both the federal and state equal protection clauses. That court's remedy for what it held to be unconstitutionally underinclusive statutes was to broaden the scope of the statute. Affirmance of Liberta's conviction, the New York court continued, under the newly expanded statute does not run afoul of

**84**

defendant's due process rights. *People v. Liberta,* 64 N.Y.2d 152, 474 N.E.2d 567, 485 N.Y.S.2d 207 (1984), *cert. denied,* 471 U.S. 1020, 105 S.Ct. 2029, 85 L.Ed.2d 310 (1985). District Court Judge Curtin, considering Liberta's federal habeas corpus petition, adopted the conclusion reached by the New York Court of Appeals and therefore denied the petition. *Liberta v. Kelly,* 657 F.Supp. 1260 (W.D.N.Y.1987). I would also deny the habeas writ for the reasons stated by the New York Court of Appeals.

The majority takes a different tack. Although it, too, affirms the denial of the writ, it disagrees with the New York Court of Appeals regarding the requirements of the federal equal protection clause. The majority concludes that the exceptions to the marital exemption and the gender-specificity of the rape and sodomy statutes do not violate federal equal protection. Under federal law, then, the statutes as enacted may be applied without implicating petitioner's due process concerns.

The disagreement between the majority and both the district court and New York's highest court has no effect on the disposition of this appeal, but it creates confusion concerning the current status of the statutes in question. It is to highlight this divergence and its consequences that I write separately.

Recognizing, as the majority itself acknowledges, that a federal court cannot review determinations of state constitutional law made by a state's highest court, it is significant that the New York Court of Appeals determined that the New York equal protection clause—as well as the federal equal protection clause—requires excision of the marital exemption and removal of the gender-specific provisions from its state's rape and sodomy statutes. Thus, the state court's determination that the rape and sodomy statutes apply to all males—regardless of their marital status—and that the rape statute applies to rape whether perpetrated by men or women remains the law in New York. These statutes are revised to the extent stated by the New York Court of Appeals, just as if the state legislature had amended the statutes

to read as that court revised them. *See Wainwright v. Stone,* 414 U.S. 21, 23, 94 S.Ct. 190, 192, 38 L.Ed.2d 179 (1973).